# WILLIAM HESS and JULIA ANN HESS, *vs.* JOSEPH NEWCOMER and SAMUEL EMMERT.

Under a covenant in the lease of a mill to keep the same in repair, and to
deliver it up at the expiration of the term in as good order as the tenants
found it, "*natural wear and tear, and fire excepted;*" if the mill *falls down* in
consequence of its *own defective construction,* and not from an improper use
of it by the tenants, this falling down is within the exception "*natural wear
and tear,*" and the tenants are not bound to repair.

If the tenants used the mill with ordinary care and prudence, and were igno-
rant of the defect in its construction, and this defect was of such a secret
character as not to be discovered by reasonable and ordinary diligence,
they are not bound to prove that the lessors knew of this defect and con-
cealed it from them.

The plaintiffs cannot object to an instruction given by the court, that it left a
question *of law* to the jury in authorising them to decide what constituted
"*reasonable and proper use of the mill,*" when their own prayer, which the
court granted, submitted the same question to the jury, and when they had
*taken issue to a plea* asserting that the falling down of the mill was the result
of natural wear and tear in the "*reasonable use*" of it.

APPEAL from Circuit Court for Washington county.

*Covenant* by the appellants against the appellees, upon the
following stipulation in the lease of a mill and premises which

the plaintiffs leased to the defendant, by an agreement under seal, dated the 23rd of February 1852: "And the said Joseph and Samuel further promise and agree to keep the mill well greased and oiled, and as to all that belongs to and is to be done by the miller, to do and to perform, and keep in repair the said mill, and to deliver up all the said premises hereinbefore leased, at the expiration of their tenancy, in as good order as they find them, natural wear and tear, and fire excepted."

The declaration contains two counts, alleging as breaches, that while the mill and premises were in the possession and enjoyment of the defendants under said agreement, the mill fell down, became ruinous and prostrated, and that such falling down and prostration were not caused by natural wear and tear, or fire, and that the defendants suffered the said mill to become and continue ruinous and prostrate for want of needful and necessary repairing, and at the expiration of their tenancy left the premises in such bad repair, order and condition, and did not deliver them up in as good order and repair as they found them, natural wear and tear, and fire, excepted, as by their covenant they promised and undertook to do.

The defendants pleaded:—1st. The general traverse, concluding to the country, upon which issue was joined. 2nd. That the falling of the mill was occasioned by a defect in the structure of the main cross-foundation wall, which existed before and at the time of making of the agreement, and was unknown to and undiscoverable by the defendants then and afterwards, and that the falling down was the result of wear and tear in the reasonable use of the mill by them, as they had a right to use it under the agreement, and that they were not bound to rebuild, &c. 3rd. That this unsoundness in said wall existed at the date of the agreement and was known to the plaintiffs, and that they concealed this fact from the defendants, and that this defect was the occasion of the falling of the mill and that defendants could not discover it. The two last special pleas were traversed by the plaintiffs and issues joined on them.

*Exception.* After evidence offered on both sides, which is

sufficiently stated in the opinion of this court, the plaintiffs asked instructions to the jury, in substance as follows:

1st. That by the true construction of the covenant declared on, the defendants were bound to keep the mill in repair and to deliver up all the premises at the expiration of their term in as good order and repair as they found them, natural wear and tear, and fire excepted; and if the jury find that the defendants entered upon and used the premises under the agreement, and that during their tenancy and while they were in possession of the same, the mill fell down and was prostrated, and became ruinous, and that such falling down, prostration and ruination were not produced by natural wear and tear in the reasonable and careful use of the mill, nor by fire, and that they surrendered up and left the mill at the expiration of their term in such ruined and prostrated condition, without repairing or rebuilding the same, then the plaintiffs are entitled to recover, unless the jury find there were secret defects and hidden unsoundness in the main or partition wall, mentioned in the defendants' pleas, and that such secret defect and unsoundness of such wall were the immediate cause of the falling down of the mill, and without any manner of carelessness, default, negligence or mismanagement of the mill by the defendants, their servants or agents, and that the plaintiffs, or one of them, knew of such secret defect or unsoundness in said wall, and concealed the same from the defendants at the time of leasing the mill, and that defendants were and remained wholly ignorant of the same.

2nd. That if the jury find that defendants entered into the agreement, and took possession of the mill thereunder, and during their term the mill, from the weight of wheat therein, or from any accidental cause, broke and fell down, they are bound by their covenant in said agreement to rebuild the mill and restore it to the condition it was in when they received it, the natural wear and tear, and fire excepted; and it is no defence to this action that the mill broke down from the giving way of a foundation wall thereof, or that the said wall was defective and insufficient to sustain the weight of wheat put in

the mill, unless the jury also find that the plaintiffs, or one of them, knew the fact of the said wall being insufficient, and improperly concealed said fact from the defendants.

3rd and 4th. These prayers are fully stated in the opinion of this court.

The court below, (PERRY, J.,) rejected the first, second and fourth prayers, but granted the third, with the qualification stated in the opinion of this court, and then further instructed the jury, as also stated in the opinion of this court. The plaintiffs excepted to the refusal to grant all their prayers without qualification, to the qualification to the third prayer, and to the further opinion and instruction of the court. The verdict and judgment were in favor of the defendants, and the plaintiffs appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Richard H. Alvey* and *Wm. Price* for the appellants, stated that their *traverse* of the pleas does not admit the *various* allegations contained in them as *valid* defences, but applies only to the *material* matters of the pleas, (8 *Mees. & Wels.*, 890, *Palmer vs. Gooden, et al.,*) and then argued the following points:

1st. That under the covenant declared on, unless the cause of the breaking down or falling of the mill is by a reasonable construction covered by and within the meaning of one of the *two exceptions* contained in the covenant, the defendants were bound, no matter what other cause or casualty may have produced the injury to or destruction of the mill, to repair and reinstate the ruined building to the same state and condition it was when they took possession of it. 6 *Term Rep.*, 651, *Bullock vs. Dommitt. Ibid.*, 751, *Canal Navigation Co. vs. Pritchard.* 2 *Saund. Rep.*, 422, *(b,)* note 2, *Walton vs. Waterhouse.* 16 *Mass.*, 238, *Phillips vs. Stevens.* 4 *H. & J.*, 564, *Wagner vs. White.* 6 *Term Rep.*, 488, *Weigall vs. Waters.* 12 *Mees. & Wels.*, 68, *Hart vs. Windsor.*

2nd. That before the defendants can make available the defence set up in their pleas, to exonerate them from responsibility under the covenant, they must clearly show that they had used the mill in a reasonable and proper manner, and that they were not, in any respect, in default or instrumental in producing the injury; and that unless there is fraud on the part of the plaintiffs, in making improper concealments of known defects or infirmities in the partition wall referred to by the pleas, and that such defects or infirmities were the immediate cause of the falling of the mill, and that such defects could not, by any reasonable means or efforts, have been discovered by the defendants, and that they were in fact circumvented and deceived by the plaintiffs in regard to the true condition of the partition wall, there can be no escape for the defendants from their responsibility under the covenant.

3rd. That in the absence of fraud or circumvention on the part of the plaintiffs, there was no *implied undertaking or warranty* by the plaintiffs as to the state and condition of the premises, or that the mill should be fit and sufficient for the purposes for which it was intended by the defendants when they leased it. 10 *Mees. & Wels.*, 320, *Arden vs. Pullen.* 12 *Do.*, 66, *Hart vs. Windsor.*

4th. That the breaking down of the mill being a *sudden and violent casualty*, could not be said with any propriety of language to be within the meaning of the exception in the covenant as to the *natural wear and tear*, those terms meaning and contemplating the usual and known results of the proper use of the mill. Natural wear and tear is *natural wear and decay;* an old house may wear out and fall down; a saw-mill may wear out by use; but that is not the case here, which is one of sudden and inevitable *accident;* the mill fell down, not from *age*, or natural *wear and tear*, but from *sudden accident.* The accident, it is true, was without default of the tenant, yet he is *still bound*, not having provided against it in his lease. A mob tears down the house, a flood comes and overwhelms it, a fire occurs, or king's enemies destroy it; in all these cases there is no default of the tenant, yet he is bound

42    v.7

to repair, unless he provided against such occurrences in *his lease,* and if the tenant be bound in such cases, *a fortiori,* is he in this.

5th. That by the instruction of the court given in this case, a *question of law,* viz., what constitutes *reasonable and proper use of the mill?* was referred to the jury, when it should have been determined by the court. 34 *Eng. C. L. Rep.,* 601, *Belcher vs. McIntosh.* 1 *Coke Litt.,* 56, *(b,)* 57, *(a.)* 7 *H. & J.,* 279, *Riggin vs. Patapsco Ins. Co.* 6 *Md. Rep.,* 104, *Cook vs. Carroll.*

6th. That the instruction given is without regard to and in violation of the express covenant of the defendants, to keep in repair and deliver up the premises at the expiration of the tenancy in as good order and repair as they were in when entered into by the defendants, and it is neither within the scope or range of the defence set up by the defendants, or supported or authorised by any the least testimony in the cause, but it was given altogether aside from the true questions involved in the controversy.

*Daniel Wiesel* and *J. Dixon Roman* for the appellees.

The breaches assigned are upon the covenant to keep in repair the mill, and deliver up the premises at the end of the term in as good order and repair as the tenants found them. Such a covenant is simply to do ordinary repairs, not extraordinary ones, except in cases of accidental fire, not provided against. It is not a covenant to restore from effects of natural wear and tear, and is indeed the same as if natural wear and tear were excepted, as they are in this covenant. This rule is deduced from the following authorities: 9 *Yerg.,* 276, *Graham vs. Swearingin.* 5 *Port.,* 318, *Perry vs. Hewlett.* 3 *Harrington,* 338, 339, *Harris & Wife, vs. Goslin.* 3 *Ros. on Ev.,* 314. 2 *Shep. Touch.,* 169. 1 *Leigh's N. P.,* 616. 32 *Eng. C. L. Rep.,* 464, *Gutteridge vs. Munyard.* 34 *Do.,* 601, *Belcher vs. McIntosh.*

The cases relied upon on the other side as teaching a different doctrine, are cases of *fire,* or for *rent,* or where the

covenants were held to be of a *special nature*.   In *Bullock vs. Dommitt*, 6 *T. R.*, 650, the destruction was by *fire*, and there being no exception, the defendant was held to repair by force of his covenant.   *Phillips vs. Stevens*, 16 *Mass.*, 238, was a similar case, except that "reasonable use and wearing" were excepted, but not fire.   The cases of *Weigall vs. Waters*, 6 *T. R.*, 488.   *Wagner vs. White*, 4 *H. & J.*, 564.   *Hart vs. Windsor*, 12 *Mees. & Wels.*, 68, were for *rent*, and in all such cases the destruction of the property or its unfitness is no defence to the action, the party covenanting to pay the *rent*, and therefore bound to this performance, and the principle being that the rent issues out of the land, and that continues.   See cases cited by counsel, *arguendo*, in 12 *Mees. & Wels.*, above.   The case in 6 *T. R.*, 750, *Canal Navigation Co. vs. Pritchard*, in which the covenant was to uphold a bridge built by the defendant, and keep it in repairs for seven years, and no exception, (the bridge having been prostrated by a sudden and extraordinary flood,) *Lord Kenyon* instructed for the plaintiffs on the special ground that it was a contract for building a bridge, and that such a loss was in the contemplation of the parties when the agreement was made.   And in the case of the Charles street mob, in Baltimore, *Wagner vs. White*, 4 *H. & J.*, 392, which was an action on the case in the nature of waste, the court were of opinion that the plaintiff was entitled to recover on the ground of *voluntary waste*, the defendant having diverted the house from the use for which he leased it to another purpose, calculated to invite the mob and the violence perpetrated by it.   In 11 *Mees. & Wels.*, 5, *Smith vs. Marrable*, the court held, that in an action for the rent, the unfitness of the house as a habitation, or for the purpose for which it was leased, was a defence, but that was confined to a ready furnished house, the contract being of a mixed nature; a case, however, evidencing the disposition of courts now to relax the old and hard rule upon this subject.

But whatever be the effect of a general covenant to repair, in this case we rely upon the exception of natural wear and tear; and this, by the pleadings and issues, was referred to

the jury.   And admitting that the court could be called upon to instruct the jury as to the meaning of the words "natural wear and tear," as it was under the 4th prayer, the court was right in refusing the instruction as presented, because it as-sumed or asserted that *wear and tear* could not result in any sudden falling down of the mill, whereas it is contended such a result might take place.   Suppose the prayer had been pre-sented in this form: "that natural wear and tear was such an injury as arose from the reasonable and proper use of the mill, and could not consist in any sudden falling down of the mill, however carefully and properly it may have been used."   Such a prayer could not have been granted.   The term or expres-sion must have reference to the condition and character of the building, and the uses to which it was to be applied.   The parties contemplated by the contract that the building was not only to be used for grinding, but also to store wheat to its reasonable and proper capacity, to be ground.   The racking and shaking of the mill by the machinery when in operation, and the pressure of the machinery, wheat and flour upon it, were the causes of the wear and tear, and these could not be avoided, if the mill was to be used at all.   Suppose the mill had fallen down, when started to work, with only one hun-dred bushels of wheat upon it, giving way in its foundation, could that have been any other than wear and tear?   Then would it not have been the same if the quantity had been a thousand bushels, or any larger amount, up to its reasonable and proper capacity?   For the parties agreed that it should be used to that extent, or this was the tenant's right.   In such case, if accident befell it, it must have been from wear and tear in the proper use of the mill, and the tenant would be exempt from liability.   It was not thrown down by the de-fendants, nor by the elements, nor by the violence of others. What caused it to fall, but its own defectiveness, its own in-herent rottenness, whilst in reasonable and proper use?   Surely it was not intended that the tenants should do nothing in the mill, or but a very small business; or, if they went beyond that, and the building fell down, that they were to put up a

new and good mill in the place of it. They did not under-
take to insure the mill, while they at the same time conducted
it in a moderate and reasonable manner; and to reconstruct
it upon the same, or a similar foundation, which would be all
that could be required of them by the plaintiffs, if successful
in the suit, and would be to do a useless act, for no one would
venture his person into it. The facts as to the manner of its
use, and the quantity of wheat on storage, &c., were all for
the jury, who, by their verdict for the appellees, have settled
that matter. The only question on the 4th prayer is, did the
court below err in refusing the instruction as presented? The
court may reject a prayer if it asks for more than the princi-
ples of law will warrant. 5 *G. & J.*, 225, *Phenix Ins. Co.
vs. Bathurst.* It may refuse a prayer as offered, without quali-
fying or explaining or instructing in its own words. 5 *Md.
Rep.*, 133, *Coates & Glenn, vs. Sangston.* 2 *Do.*, 74, *Keener
vs. Harrod, et al.*, and cases there cited. This disposes of the
appellees' *first* point.

As to the *second* point, which covers the refusal to grant
the first and second prayers, the explanation or qualification
of the third, and the additional instruction of the court. The
pleas were the general traverse and two special pleas, and
issues of fact were taken *upon all of them.* Each one, there-
fore, became a good defence, and if the jury found *any one*
of them true in point of fact, the defendants were entitled to
the verdict. To take issue upon a plea is to admit its suf-
ficiency as a plea in bar, if the facts it sets out be shown by
the proof. 1 *G. & J.*, 323, 324, *Danels vs. Taggart's Admr.*
The court below was not called upon to instruct the jury what
facts it was necessary to find to sustain *each plea*, but what
facts they were to find if a verdict was to be rendered at all
for the defendants; and the prayers were made to rest upon
the finding of particular facts, though averred in one of the
pleas, (and of which there is some proof in the record,) which
were not necessary to be found under the other pleas. The
effect of such an instruction, if granted, would be the singling
out by the court of certain pleas as the only good defences,

and pronounce against the others, when the plaintiffs themselves had not demurred, but, by taking issue upon the facts, had admitted all to be good. This would be in violation of all the rules and objects of correct pleading. The first and second instructions, as prayed, made the knowledge of the plaintiffs of the defects in the foundation wall, and their concealment of them from the defendants at the time of the contract or afterwards, essential to the finding of a verdict for the defendants, when under the first and second pleas, which averred no such knowledge or concealment, and which contained sufficient matters of defence in themselves without such averments, the defendants were entitled to the verdict, if sustained by satisfactory proof.

If the court had been called upon to instruct as to what was necessary to find under *the third plea,* then it might be necessary to find this fraudulent knowledge and concealment, if not deemed immaterial. But this was not asked. The prayer was general; and the court could not say this was necessary, when under the second plea a different state of facts was presented, sufficient in themselves, if proved, to entitle the defendants to the verdict.

If there be several pleas in bar, for example, payment, setoff, limitations, and there be proof of payment, a prayer that defendant was not entitled to the verdict unless the jury believed the claim to be more than three years standing, could not be granted; because the defendant is entitled to the verdict upon the proof of payment, if believed, though the claim may be within that time. That is this case. The defendants did not rely upon the fraudulent knowledge and concealment on the part of the plaintiffs, although there were facts in proof to show it. But under the first and second pleas the defendants were entitled to the verdict without showing that knowledge, &c., and the court so said. There is or can be no error in this. And though the prayers may have been good in part, yet if they were bad in part, they were properly rejected. 5 *Md. Rep.,* 448, *Stewart vs. Spedden.* 3 *Gill,* 198, *Budd vs. Brooke.* 7 *G. & J.,* 407, *Franklin vs. Long.*

The third prayer was granted with a qualification, to the effect that if the defendants could not discover the defects by reasonable diligence or care. This was rather beneficial to the plaintiffs, for it imposed upon the defendants the duty of making the discovery, if it could be done, by ordinary diligence. The party seeking an instruction cannot complain if his cause is placed, by the instruction given, in a more favorable aspect before the jury. 10 *G. & J.*, 354, *Planters Bank vs. Bank of Alexandria.*

The additional instruction was merely an extension of the third prayer, or a more careful repetition of what was contained in it; not distinct and isolated, but having reference to all the proofs in the cause, and explaining what was necessary to find either way, and under the contract, and the court, in any instructions it could frame, would have come to the same result. The court may grant or refuse a prayer as offered; but if it sees proper, to a full and fair comprehension of the law, to add qualifications or explanations, or to instruct the jury in its own words, it can do so without error. 5 *Md. Rep.*, 133, *Coates & Glenn, vs. Sangston.* 2 *Do.*, 74, *Keener vs. Harrod, et al.* 6 *G. & J.*, 404, *Hale vs. Hall.*

ECCLESTON, J., delivered the opinion of this court.

On the 23rd of February 1852, the appellants leased to the appellees, by an agreement under seal, a stone mill, then but recently rebuilt, after having been burnt some time previously. That portion of the agreement which relates particularly to the present controversy, is in the following language: "And the said Joseph and Samuel further promise and agree to keep the mill greased and oiled, and as to all what belongs to and is to be done by the miller, to do and perform, and keep in repair the said mill, and to deliver up all the said premises hereinbefore leased, at the expiration of their tenancy, in as good order and repair as they find them, natural wear and tear and fire excepted."

During the term the mill fell down, and not being repaired or rebuilt, after the termination of the lease, the present suit

was instituted, to recover damages for what the appellants charge to be a breach of the covenant, to repair and deliver up the property in good order.

The plaintiffs contend, that under the contract the defendants were bound to return the mill in as good order and repair as they found it, and also that the falling down of the same did not come within the exception of natural wear and tear. But the defendants insist that the mill fell in consequence of a defect, unknown to them, in the main cross wall, resulting from the action of the fire upon the lime-stone, of which it was composed, whilst they were using the mill with reasonable and proper care, and therefore they are excused from repairing or rebuilding, by virtue of the exception contained in the lease.

The plaintiffs offered proof for the purpose of showing the nature and condition of the mill, and especially of the main cross wall; that the defendants had in the mill a much larger quantity of wheat than was prudent or proper; and that the weight of the wheat occasioned the injury. The defendants, however, examined witnesses to show the defective character of the wall; that from the size and general appearance of the mill, any intelligent miller would have supposed the mill-house capable of bearing a much larger quantity of wheat than it contained when it fell; and that the condition of the wall, after the accident, showed the injury to have been occasioned by the defect in the wall. Whether the proof establishes the correctness of the plaintiffs' theory, or that of the defendants', we are not the tribunal to decide. That was for the jury. So far as we have any duty to perform, it is only necessary for us to know that such proof was offered.

Before we consider the prayers, it is proper to enquire whether, by the exception in the agreement, the defendants are exonerated from rebuilding the mill if it fell in consequence of its own defective construction, and not from an improper use of it by the defendants?

Under a covenant to pay rent, the tenant is bound to pay, even where the premises are destroyed by fire, flood, tempest,

lightning, or the violence of a mob, unless the lease contains an express clause of exoneration on account of such injuries. The reason given for the rule is, because the party may, if he thinks proper, provide against such casualties by express contract. The principle rests upon the distinction between a duty imposed by law, and one voluntarily assumed by the party himself. In the former he may be excused from the duty, if he is disabled from performing it without fault on his part; whilst in the latter he is bound to make it good, notwithstanding any accident by inevitable necessity. 2 *Platt on Leases*, 120, and 12 *Mees. & Wels.*, 86, 87, 88, *Hart vs. Windsor.* In the last case it is said, " There is no implied warranty on a lease of a house, or of land, that it is or shall be reasonably fit for habitation or cultivation. The implied contract relates only to the estate, not to the condition of the property."

The appellants say these principles apply not only to covenants for payment of rent, but also to covenants for repairs. Admitting this to be true in reference to a contract to repair generally, and to return the property in good order, without any express exception or qualification, still the question arises, whether, under the exception, in the present case, in regard to natural wear and tear, the defendants are not excused from rebuilding the mill, provided the injury was not occasioned by any improper use of it by them?

Although when a lease contains no express contract of warranty that the property is or shall be fit for the purpose for which it may be rented, there is no implied warranty to that effect, and in case the property falls down in consequence of some inherent defect, the lessor is not bound to repair, and yet the lessee will be compelled to pay the rent; nevertheless the lessee will not be bound to repair in such a case, if there be a covenant to repair and to return the property in the same condition he received it, natural wear and tear excepted; provided that at the time of the loss the lessee was using the property in a reasonable and suitable manner, according to the object and design of the parties when the contract was made. If a man rents a house for a particular purpose, and

·that is known to both parties, the lessee surely has the right ·to use it for such purpose, provided he does so with a reason-:able degree of prudence and care.   And if, during such use, the house tumbles down, in consequence of some defect in its ·structure, does not the loss result from natural wear and tear? The defect is a part of the nature of the building, and if that ·nature is the cause of the mischief, the loss is necessarily the ,consequence of natural wear and tear.

The plaintiffs submitted four prayers.   The first, second ,and fourth the court rejected, but granted the third, with a qualification.

.   The first and second were properly refused.   They were ·defective in consequence of assuming it to be necessary for :the defendants to satisfy the jury that the plaintiffs, or one of them, knew of the alleged secret defect or unsoundness in the wall, and concealed the same from the defendants.

.   If, irrespective of the defect in the wall, the defendants ·were making such use of the mill as a man of ordinary care and prudence would have made, and the defendants were ig-,norant of the defect, and it was of such a secret or concealed character that it was not to be discovered by reasonable and ordinary diligence, then, for the purposes of the defence, there ·was no necessity to prove that the plaintiffs, or either of them, had a knowledge of the defect, and concealed it from the de-.fendants.

These prayers do not refer to the pleadings in express terms, ,and if they could be considered as calling our attention to· them, still the error we have noticed would not be cured. The second plea does not rely upon the plaintiffs' knowledge .of the unsound condition of the wall, and the concealment of it.   The third plea does.   Assuming that the prayers have reference to the pleadings, there is certainly nothing which confines or points them to the issue joined upon the third plea. And the second plea presenting no issue upon this particular .subject, which, in our opinion, is, in itself, of no importance to the defence, the prayers must be considered erroneous.

We see no evidence to show that the defendants had a

knowledge of the unsound condition of the wall. Proof of that description might have exerted a very important influence in the cause.

The fourth prayer is: "That by the true construction of the covenant declared on in this cause, and the exception therein contained as to the natural wear and tear of the mill, the same means and extends only to such natural wear and tear as are produced in the reasonable and careful use of the said mill, and not to any accidental or sudden cause, at once throwing down and prostrating the same." The prayer is vicious, because it asserts the proposition, that no accidental or sudden throwing down and prostration of the mill could be natural wear or tear, no matter how reasonably and carefully the mill might have been used. The error consists in supposing the exception can include no injury which is not gradual and the work of time; or in other words, the exception is considered as synonymous with gradual decay. If the word *wear* may seem to sanction such a construction, surely the same cannot be said of *tear*. Suppose a mill just erected and rented, under such a lease as the present. In the machinery there is a concealed or undiscovered radical defect. The tenant enters upon the premises, and in a very short time after the mill is put in operation the defect causes so serious an injury to the machinery, as to render the mill useless, unless reconstructed or repaired at very great expense; can it be possible that the lessee would be bound to make good the loss, although his lease provided for his exoneration from repairing injuries arising from natural wear and tear? If in consequence of the nature of the mill, and not from any improper use of it, the injury occurred, although suddenly, would it not be the result of natural wear and tear?

The third prayer is: "That if the jury shall find from the evidence in the cause that the said defendants entered upon the said demised premises, in pursuance of the said agreement declared on, and which is in evidence in this cause, and used and enjoyed the same, and that during the said term or tenancy, and while the said defendants were so in possession,

the said mill-house fell down and was prostrated, and became ruinous, and that such falling down, prostration and ruination, were not produced by natural wear and tear in the reasonable and careful use of the said mill, nor by fire, and that the said defendants surrendered up and left the said mill and premises, at the expiration of their said term or tenancy as aforesaid, in such ruined and prostrated condition without repairing and rebuilding the said mill, then the plaintiffs are entitled to recover in this action, unless the jury shall further find from the said evidence that there were existing at the time of the making of the said agreement, undiscoverable defects in the main or partition wall mentioned in the said defendants' pleas, and that such latent and undiscoverable defects in the said wall were the immediate and direct cause of the falling down and prostration of the said mill without any manner of default, carelessness, negligence or mismanagement of the said mill by the said defendants, their agents or servants; and shall further find that the said defendants could not, nor did either of them, at the time of the making of the said agreement, or at any time before the said falling down and prostration as aforesaid of the said mill, know of or have any knowledge whatever of such defects in the said wall."

From the bill of exceptions it appears the court granted the third prayer, "with this qualification or exception, to wit, that if the jury should find that said secret defects were unknown to the said defendants, and were undiscoverable or could not be known by reasonable and ordinary diligence." We see no error in the qualification. It relates to the concluding portion of the prayer, the language of which was well calculated to mislead the jury. In most explicit terms it required the proof in defence to satisfy the jury, not only that neither of the defendants, at the time of making the contract, or at any time before the mill fell down, knew of, or had any knowledge whatever of, the defects in the wall, but that the defendants *could not* have any such knowledge. With such a prayer before them the jury might very well have believed they were not authorized to excuse the defendants from lia-

bility, on account of defects in the wall, unless they were convinced that it was *impossible* for the defendants to have acquired a knowledge of those defects, the prayer expressly requiring them to find that the defendants could not know, or have any knowledge of, the defects. The qualification presents the matter correctly, by presenting to the jury the enquiry, whether the defects were unknown to the defendants, and also whether they were undiscoverable, or could not be known by reasonable and ordinary diligence.

Immediately following this qualification of the third prayer the bill of exceptions proceeds thus: "And the said court was further of the opinion, and so instructed the jury, that if they shall believe from the evidence that the injury was occasioned from the reasonable and proper use of the said mill by the defendants, their agents and servants, and without any neglect or default of the said defendants, then the plaintiffs are not entitled to recover.

But if they shall believe from the evidence the injury was occasioned from the want of proper care, or from neglect or unreasonable use of said mill, then the plaintiffs will be entitled to recover in this action."

This further opinion and instruction, which seems to have been given in connection with the third prayer, and the qualification of the same, we understand as having been designed by the court as a reiteration, in language somewhat different, of the same subject of inquiry submitted by the prayer; that is, whether the falling of the mill resulted from the defect in itself whilst being used by the defendants, their agents and servants, with reasonable and proper care, and without any neglect or default on their part, or was occasioned by want of proper care, or from neglect or unreasonable use of the mill.

Objection has been made to this further instruction of the court, because it submits to the jury a question of law and not of fact, by authorizing them to decide upon what constituted *reasonable and proper use of the mill.* Admitting this to be true, still the plaintiffs cannot complain of it, for it is perfectly consistent with their third prayer, which submits to

the jury to find whether the falling of the mill was or was not produced, by natural wear and tear, in *the reasonable and careful use* thereof. Moreover, it will be seen the second plea asserts, that the falling down of the mill was without the default of the defendants, or either of them, or any of their agents or servants, and was the result of natural wear and tear, in the *reasonable use* of the mill by the defendants. Upon this plea issue was joined. In this state of pleading, with the plaintiffs' third prayer before the court, and in the absence of any prayer asking an instruction to define what constituted *reasonable use*, the instruction given by the court could not be erroneous. When considering an objection to a prayer because it submitted to the jury a question of law, Judge Dorsey said, in delivering the opinion of the court: "It surely could not have been error in the court in sub-mitting, as they did, the issue in fact to the jury in the very terms in which it had been joined." *Planters Bank of Prince George's County vs. Bank of Alexandria*, 10 G. & J., 353.

*Judgment affirmed.*