SUTCLIFF v. SELIGMAN et al.

(District Court, S. D. New York. July 24, 1901.)

1. SHIPPING—CHARTER OF LAUNCH—DEFECTS IN MACHINERY.

A steam launch was demised by charter to be used on the Hudson river as a coaching launch for college boat crews. It was warranted by the owner to be in good condition, and the charterers engaged to return it in the same good condition, "damage by usual wear and tear excepted." In the course of its use it became necessary to procure a small boat from a former boathouse on the Harlem river, and the launch was sent for it, and while on the trip it was disabled by the breaking of a pin which connected the eccentric with the shaft of the engine. *Held,* that such use of the boat was not a violation of the charter, being germane to the purpose therein specified, and did not render the charterers liable for the damages, which must be regarded as resulting from a defect in the pin or machinery, which showed that the launch was not in good condition as warranted, as well as within the exception of usual wear and tear; it being shown that the engineer in charge was competent, and that the machinery was not subjected to any unusual strain, but was being used in the ordinary manner.

2. SAME—CONSTRUCTION OF CHARTER.

Where a written charter demising a launch contained no stipulation for the employment by the charterer of any particular person as engineer, a parol agreement by the charterer to employ a person requested by the owner did not become a condition of the charter, nor did his employment in accordance with such agreement preclude the charterer from rightfully employing another competent engineer to run the engine on an occasion when the regular engineer was absent.

3. SAME—LIABILITY OF CHARTERER—UNAUTHORIZED USE OF VESSEL.

The fact that a charterer puts the chartered vessel to a different use from that specified in the charter does not render him liable to the owner for an injury to the vessel, if it appears that the unauthorized use certainly did not cause or contribute to the damage.

In Admiralty. Suit for breach of charter.

Hardy & Shellabarger, for libelant.

Seligman & Seligman, for respondents.

BROWN, District Judge. The above libel was filed against the members of the Columbia College Union to recover the damages arising from the alleged misuse in May, 1896, of the libelant's steam launch Sinbad, which was 42 feet long by 8½ feet beam and provided with a compound vertical engine of the Herreshoff type. Only the defendant Seligman was served with process.

The launch was let to the union by a written charter dated April 26, 1896, for two weeks from that day for the sum of $150, to be used by the union "for a coaching launch for the university and freshman

crews of Columbia College on the Hudson river," to be returned "at the end of the term in as good condition as at the time of the execution of the agreement, damage by usual wear and tear excepted."

The second clause of the charter read: "The party of the second part (i. e. the charterers) engages that the launch is in good condition," etc. The context as well as the testimony makes it entirely clear that the words "second part" were written in this clause instead of "first part" by a clerical mistake; and in accordance with an order made in the cause, the charter should be treated as binding the libelant to the "good condition," that is, seaworthy condition, of the launch when delivered to the charterers.

The charter was a charter of demise, giving the possession and control of the launch to the charterers, whose duty it, therefore, was to provide and pay for the captain and crew. The owner required the charterers, however, to employ as engineer C. L. King, (who had just put in new engines under a guaranty of their sufficiency, and had been but partly paid for them) so that any defects might be supplied by him; and at the time of the charter, it is apparent, from King's own testimony, that the engines had not been sufficiently used to bring them into assured perfect running condition. The boat was accordingly used under King as engineer for coaching purposes, from the new Columbia boathouse at 116th street and North river, the hours arranged for King's attendance being from 3 p. m. to 8. On the 8th day of May, the 10th day of the charter, the union being in want of a small boat and oars remaining at its former boathouse at 125th street and Harlem river, the captain went there with the launch to bring them around to their new quarters at 116th street and North river; and King not being present to act as engineer, the captain employed one Crimmins as engineer for the trip. After obtaining the small boat and oars, the launch not being able to return to 116th street via Spuyten Duyvil, by reason of an accident to the bridge there, was obliged to return via Harlem river and the Battery, and when opposite 90th street, the pin connecting the eccentrics with the shaft suddenly broke, rendering the launch's engine incapable of running either forward or back. There is a conflict as to the size and strength of the pin. King says it was about one and one-half inches long by three-fourths or five-eighths of an inch in diameter with a screw thread turned upon it. The respondents' witness says it was three-eighths of an inch in diameter and too weak. After some examination by the captain and engineer, no means of repair being at hand, and efforts to bring the launch to shore being ineffectual, she was taken in tow by a steam tug and brought first to Astoria ferry, and afterwards to her previous moorings near King's office at the Atlantic basin, whence she was first taken and where she had been several times sent for repairs during the charter. A claim for salvage was made upon the owner, to avoid which her agent sent the launch to New Jersey, but she was there attached and a decree for $30 salvage and $227.50 costs was subsequently rendered against her. The present libel claims payment of these damages, as well as additional sums for counsel fees and marshal's fees, repairs and demurrage, amounting in all to $1,136.50.

Upon all the evidence and circumstances, I do not think the libelant is entitled to recover. I regard the weight of proof as establishing insufficiency or defects in the machinery as the cause of the breakdown on the 8th, as well as of the repeated repairs to the engine that were required during the previous eight days' use of the launch under the charter; and that there was no negligence or misuse of the launch, or of her engines, on the trip to the Harlem river on the 8th day of May, and that the breakdown was not caused by any fault for which the respondents are answerable. The inconsistencies and contradictions in the testimony of Sutcliff and King, the latter's grossly different statements on the present trial and in the salvage suit, and his evident interest in the result, detract very greatly from the credit to be given their testimony when contradicted, as it is here, on almost every material point.

There was no requirement in the written charter that King should act as engineer, and no stipulation, therefore, can be ingrafted upon the charter by parol, as a condition or as a warranty; and if King was employed as the regular engineer, in accordance with an outside request or agreement, that did not exclude the rightful occasional employment of any other competent engineer when King was not present.

The trip to the former boathouse at 116th street and Harlem river in order to procure the small boat and oars needed for coaching purposes, was so germane and incidental to the express purpose of the charter, as to constitute no violation of its general provision. The evidence also shows conclusively, as it seems to me, that the breakdown arose from causes having nothing to do with the locality where the breakdown occurred; but that it arose, as I have said, from insufficiency or defects in pin or machinery, and that the same result must have soon occurred on the Hudson river, had it not occurred on the Harlem. See Strong v. U. S., 154 U. S. 632, 14 Sup. Ct. 1182, 24 L. Ed. 664; Lilley v. Doubleday, 7 Q. B. Div. 510; Maghee v. Transportation Co., 45 N. Y. 514, 6 Am. Rep. 124; Lewis v. Smith, 107 Mass. 334; 5 Am. & Eng. Enc. Law (2d Ed.) 422–424. No doubt the burden of proof would rest upon the respondents to show this satisfactorily, if the trip in the Harlem river were deemed to be a breach of the charter. But I think he has sustained this burden. Crimmins was a perfectly competent engineer for this trip. He understood the engine and its working; and nothing occurred on the trip to require special expert work. The evidence is also explicit and uncontradicted that the machinery on this trip had been working smoothly for two hours; that there was nothing unusual in the circumstances, and that the machinery had not been meddled with in any way, and that there was no strain of any kind to cause the sudden breaking of the pin, although about two miles above the engine was slowed to allow another boat to pass.

King testifies:

"The only thing that I could say that could have broke that engine was reversing the engine under full head of steam * * * very bad practice. In cases of collision we do it, but not otherwise."

Later he testified that dropping a tool in the machinery might cause it. Both those causes are, however, clearly negatived by the

testimony. Nothing was dropped in the machinery, and the engine was not reversed at all. Twiggs, a licensed marine engineer, moreover, testifies that reversal causes no strain on that pin. King testifies that in ordinary use for coaching, the engine has constantly to be started suddenly at full speed, which is a strain on the machinery; and this testimony, with the testimony as to the lightness of the pin, the previous frequent need of repairs and the absence of any strain or specific cause at the time of the accident, convince me that the breaking of the pin arose solely from its own insufficiency in connection with the other machinery, and not from any improper use of the launch in the Harlem river. In other words the launch was not "in good condition," nor sufficient or seaworthy for the purposes for which it was chartered, and this was the only cause of the accident. This was a breach of the libelant's obligation, and also brought the damage within the charter exception of "usual wear and tear," since the launch had nothing but the usual wear and use; and breakage from insufficiency while in only ordinary use, is within that exception. Hess v. Newcomer, 7 Md. 325, 339.

King testified that he examined the broken pin and that it had no flaw; but it appeared that this examination was but for a moment and of the most cursory character, and not at all sufficient to be accepted as a test. The pin itself has not been produced as an exhibit, as is commonly done in such cases; if it was not preserved, the failure of King to keep it, if of doubtful soundness or sufficiency, would not be unnatural.

On the original argument the hearing was suspended, and permission was given to take further testimony as to seaworthiness, etc.; the witness King gave further testimony denying the competency of ordinary engineers to handle the Herreshoff type of engine, and stated some alleged instruction of the Herreshoff firm on that subject. He was contradicted by two witnesses on the former point; and the latter testimony was incompetent, and should be disregarded, and the motion submitted on the argument for a commission to examine the Herreshoff firm for the purpose of contradicting King's statements on the latter point, supported by their letter to the contrary, submitted as part of the motion papers, is accordingly denied, as unnecessary.

Libel dismissed, with costs.