# · JAMES A. WHITCOMB *vs.* THOMAS J. MASON.

*Duty of Landlord of Office Building to Keep Open the Doors and Halls in Business Hours—Unexpected Fire on Sunday—Removal of Furniture from Office Obstructed by Locked Door—Appeal.*

When the owner of a building leases separate portions of it to different tenants and reserves under his control the halls, stairways and other portions of the building, used in common by all of the tenants, he is under an obligation to use reasonable diligence to keep the portions of the building so retained under his control in a safe condition and free from improper obstructions.

In the case of a building located in the business portion of the city in which offices are rented, mainly to lawyers, the landlord should keep open the outer doors, halls and stairways during such hours as the tenants and persons having business with them might reasonably be expected to desire access to the offices, but he is not required to keep open the doors, &c., throughout the night nor on Sunday, which is a *dies non* as to secular avocations.

The fact that one of the doors of such an office building is closed on a Sunday while there was a sudden conflagration in that portion of the city, and a tenant is thereby prevented from removing furniture from his office, although he had obtained access thereto by another door, does not impose any liability upon the landlord for the tenant's loss of his furniture.

Plaintiff was the tenant of an office on the second floor of an office building in the business portion of Baltimore City, to which access was had by a door opening on the street on the first floor and by another door on the second floor opening on a stairway leading to the street. While a fire was raging in the vicinity on a Sunday plaintiff went to his office, the door on the first floor being open, and sought to remove his furniture, but found the door on the second floor locked, and as the furniture could only be taken out through this door its removal could not be effected, and he brought this action against the landlord for the loss occasioned by the destruction of his furniture. Neither the landlord nor his agent in charge of the building was on the premises at the time. *Held,* ·that since the fire which destroyed the building occurred on a Sunday and was an emergency which could not be foreseen by reasonable care, the landlord was under no obligation to provide on that day means of egress from the building suitable for the removal of furniture therefrom.

*Held,* further, that since there is evidence in the case that the door on the second floor could have been opened from the inside by reasonable

efforts, the jury should have been instructed that if such be found as a fact the plaintiff is not entitled to recover.

When no exception is taken during a trial to certain statements of the counsel to the jury, but a motion for a new trial is made on that account, then on appeal from the judgment the question so raised is not open to review, since no appeal lies from the action of the trial Court on a motion for a new trial.

Appeal from the Court of Common Pleas (SHARP, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*John Hinkley,* for the appellant.

The Court is not required to determine the question of total deprivation of access to the building by the tenant on Sunday, but the question as presented by the defendant's fourth prayer is of much less difficulty. The lower door was open all the time, and the plaintiff passed freely in and out of his office as he chose. All the tenants of the floors above the plaintiff were compelled to use the stairway, and the plaintiff's proposition is that the landlord was obliged not only to furnish him access to his office but with a special additional means of access for his convenience in moving his furniture. Even though the law should be held to be that the landlord must open an office building on Sunday in case of a fire, the plaintiff's case requires the placing of a much heavier burden upon the landlord than such a rule would impose.

In *Doyle* v. *Union Pacific Railway Co.*, 147 U. S. 423, it is said: "It is, however, well settled that the law does not imply any warranty on the part of the landlord that the house is reasonably fit for occupation; much less does it imply a warranty that no accident should befall the tenant from external forces, such as storms, tornadoes, earthquakes or snow-slides." See also *Gallagher* v. *Button*, 73 Conn. 172; *Bowe* v. *Harding*, 135 Mass. 380.

The upper door was not closed by the defendant or his agent. There is a clear failure of proof to connect the defendant or his agent Miller or the janitor with the closing of the

upper door. This question is raised by the defendant's first and second prayers.

The defendant's second prayer instructs the jury as to the burden of proof with regard to the closing of the door, and sets out the proposition that if the door was in fact open at one time during the afternoon the burden of proof is on the plaintiff to show that it was closed by an agent of the defendant. We are unable to see anything objectionable in this prayer. The declaration counts upon the denial of access by the defendant's agent, and if it had not made this allegation it would have been bad on demurrer. The obstruction of the means of exit by a third party or even a tenant of another office would not have given the plaintiff a cause of action. Some authorities on the question of interference with the tenant by parties other than the landlord are here given. *McAdam on Landlord and Tenant*, vol. 1, p. 404; *Redman & Lyons on L. and T.*, 161 (4th ed.); *Taylor on L. and T.*, vol. 1, 371 (9th ed.); *Jeffryes* v. *Evans*, 19 C. B. (N. S.) 246; s. c., 15 English Ruling Cases, 716; *Sanderson* v. *Mayor of Berwick*, 13 Q. B. Div. 547 at 550; *Harrison* v. *Lord Muncaster*, 1891, 2 Q. B. 680; *Benedict* v. *Darling*, 79 Wis. 551; *Abrams* v. *Watson*, 59 Ala. 524, at 525; *Baugher* v. *Wilkins*, 16 Md. 35, at 45; *Sigmund* v. *Howard Bank*, 29 Md. 324; *Serio* v. *Murphy*, 99 Md. 545.

The question whether the plaintiff could have opened the door by reasonable efforts should have been considered by the jury.

The result of the Court's rulings on the prayers was not only that this case was not taken from the jury, but the Court *refused to grant any instructions whatever except on the measure of damages.* The plaintiff offered no instruction except on the measure of damages, preferring to take his chances before the jury on a weak case without any instruction. The plaintiff's prayer making the jury the sole judges of what constituted negligence without any guidance from the Court was distinctly bad and ought not to have been granted.

The argument of counsel from the rejection of the defend-

ant's first prayer, constitutes the third exception and arises on the motion for a new trial. The objectionable language used by the plaintiff's counsel at his closing speech is shown by the memorandum of Mr. Singly, made on the day after the trial. It led the jury, taken in connection with the instructions granted on the measure of damages, naturally to conclude that their verdict must necessarily be for the plaintiff, and the only question for them to determine was the value of the goods which the plaintiff was unable to remove. *Maenner* v. *Carroll*, 46 Md. 193, at 225, 226.

*Thos. Ireland Elliott* and *M. Albert Levinson*, for the appellee.

There was evidence in this case that the plaintiff was prevented by the closing of certain doors, and the obstruction of the only available means of exit from removing his goods, and when the defendant's prayer was submitted he had offered no testimony at all to show that he was not responsible for the condition of the building which he owned, which was under his control, and for which he was responsible. If, therefore, the plaintiff had the right to free ingress and egress to and from his office, and the unobstructed use of such passageways and means of exit as to enable him to remove his goods and save them from the impending destruction, he had also the right to demand, not only that the landlord should furnish them to him, but that no third person should be permitted to obstruct them. *Wilbur* v. *Follansbee*, 97 Wis. 577; *Totten* v. *Phipps*, 52 N. Y. 354–5; 18 *Am. & Eng. Ency. of Law* (2 ed.), 629; *McAdams' Landlord and Tenant*, vol. 2, p. 1398.

The same circumstances of impending destruction, which induced the plaintiff to endeavor to remove his goods from a threatened danger ought to have evoked some display of prudence on the part of the landlord or his agent in providing a means of exit for his tenants. *Shearman & Redfield on Negligence* (5 ed.), vol. 1, p. 31; 21 *Am. & Eng. Ency. of Law* (2 ed.), 498, foot note; *Denning* v. *Merchants' Cotton Press*, 90 Tenn. 353; *Railroad Co.* v. *Kelly*, 91 Tenn. 704.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Court of Common Pleas of Baltimore City. This suit was instituted to recover damages alleged to have been caused by the fault and negligence of the appellant in preventing the appellee from removing his furniture from an office, rented by him from the appellant, in time to prevent its destruction by fire.

No questions of pleading or admissibility of evidence are raised by the appeal. The only exceptions taken at the trial of the case were to the Court's rulings on the prayers which will be referred to later on in this opinion.

It appears from the record that at the time of the great fire which occurred in Baltimore City on February 7th, 1904, the appellee, Mason, occupied as tenant of the appellant, Whitcomb, a room on the second floor of the office building No. 110 St. Paul street. Whitcomb, who owned the building, was a non-resident and it was in charge of his resident agent, J. A. Miller. The suit was originally brought against both Whitcomb and Miller but it was dismissed as to the latter at the trial.

The building was about one hundred and twenty-three feet deep. A hallway running through it from front to rear on each floor afforded ingress and egress from the rooms rented as offices and was used in common by their tenants. On one side of this hallway and about thirty feet back from the front of the building there was an elevator and also a stairway affording access to the different floors. There were two entrances to the building from the street, one at the front end of hallway on the first floor and the other at a similar position on the second floor. The entrance on the first floor was on the level of the street and the one on the second floor was reached from the street by a flight of stone steps ascending sidewise on the outside of the building. The office rented by the appellee was on the second floor adjoining the elevator and stairway.

There is evidence in the record tending to prove that at about 3 o'clock P. M. on the day of the fire Mason, having

been informed of its threatening character, went from his home at Hampden in the suburbs of the city to his office in Whitcomb's building and took from it his insurance policies and then went out to see the fire. At that time he found the door to the second-story entrance locked and he went to his office through the door on the first floor which was open. Becoming alarmed at the increasing speed and fury of the fire he returned in about an hour and a-half, with a wagon, to his office for the purpose of removing its contents to a place of safety. With the aid of several other persons he removed his valuable papers and some of his books by way of the passage and door on the ground floor but when he attempted to take his desk and other large articles of furniture out by that way he found the stairway too cramped to permit them to be carried down to the first floor. He then, with a view of taking those articles out of the building by way of the front door on the second story, again tried that door but found it still locked and was unable to open it. It being Sunday the elevator was not running. About that time he heard that a house in the rear of the building was about to be dynamited in the effort to check the progress of the fire. He thereupon abandoned the attempt to save the residue of his office furniture and it was soon overtaken and destroyed by the fire. He did not see Mr. Miller, the landlord's agent, on the premises at either visit to his office nor did he know who had locked the second-story front door.

There was evidence, on the contrary, tending to prove that on the afternoon of the fire the second-story front door of the building was not tightly locked but was held only by a night latch or other fastening that could be easily opened from the inside without a key. In fact the tenant of one of the other rooms in the building testified without contradiction that at about two o'clock on the same afternoon he had opened that door from the inside without difficulty and gone out through it to the platform of the outside steps leading up to it, and stood there ten or fifteen minutes looking at the passers by and then re-entered the building by the same door which he closed after him without locking it.

The amended *narr.* on which the case was tried, in setting forth the conduct of the defendant complained of by the plaintiff, alleges that the removal of the furniture "was prevented by the fault and negligence of said defendant who notwithstanding and in spite of repeated demands by this plaintiff made by him of the agent of defendant then in possession the said agent barred and maintained barred the necessary means of exit from said building and office" and by that means alone the plaintiff was unable to remove his furniture and it was destroyed by the fire. There is however no evidence in the record tending to show the making of the alleged demand by the plaintiff upon the defendant's agent.

The theory of the plaintiff's case as stated on his brief is that it was the duty of his landlord to secure to him at all times free ingrees and egress to and from his office and the unobstructed use of such passage ways and means of exit as to enable him to remove his goods and save them from an impending destruction. The precise question thus arising is one of first presentation but its solution, in a case like the present one, where there is a mere verbal renting with a total absence of any express covenant on the part of the landlord, must be found in a consideration of the implied obligation resting upon a landlord as such in reference to the physical condition of the demised property.

The general doctrine applicable to this subject has recently received careful consideration by us in the case of *Smith* v. *Walsh*, 92 Md. 529–30. We then said "There is no implied covenant requiring the landlord to make repairs. *Gluck* v. *Mayor, &c., of Baltimore*, 81 Md. 326. 'There is no implied warranty on a lease of a house or land that it shall be reasonably fit for habitation or cultivation. The implied contract relates only to the estate not to the condition of the property. When a lease contains no express contract of warranty that the property is or shall be fit for the purpose for which it may be rented there is no implied warranty to that effect, and in case the property falls down in consequence of some inherent defect the lessor is not bound to repair and yet the

lessee will be compelled to pay the rent. *Hess* v. *Newcomer,* 7 Md. 337. After fully recognizing the landlord's liability to third persons not claiming under the tenant it is said in *Taylor on Landlord and Tenant,* sec. 175A, that the lessor's liability to the lessee is however much more restricted, as the former does not warrant the condition of the premises and the tenant, because he can inspect them, assumes the risk of their state. For any injury suffered by him during his occupancy by their defective condition or even faulty construction he cannot make the lessor answerable unless there was misrepresentation, active concealment or perhaps a total inability on the tenant's part to discover the defect before entering." After citing many cases in support of the doctrine there stated we further say in that case : "The reason of the rule is perfectly apparent. If the lessee knows the condition of the premises and rents it without requiring the owner to repair it he takes it as he finds it and has no right to complain of injuries sustained on account of its condition."

Although the liability of the landlord as to the physical condition of the premises covered by the lease is as above stated the weight of modern authority supports the rule that where he leases separate portions of the same building to different tenants and reserves under his control the halls, stairways and other portions of the building used in common by all of the tenants as means of access to their respective rooms or apartments, he is under an obligation to use reasonable diligence to keep the portions, so retained under his control, of the building in a safe condition and free from improper obstructions. *Amer & Eng. Ency. of Law,* 2nd ed.; vol. 18, p. 220–1; *Gilvon* v. *Reilly,* 50 N. J. L. 26; *Looney* v. *McLean,* 129 Mass. 33; *Vanderbeck* v. *Hendry,* 34 N. J. 471–2; *Brunker* v. *Cummons,* 133 Ind. 443; *McGinley* v. *Alliance Trust Co.,* 56 L. R. A. 334; *Dollard* v. *Roberts,* 14 L. R. A. 238, and notes thereto.

This obligation of the landlord to the tenants of different parts of the same building, in reference to the halls, stairways, doors, &c., of which he has kept possession for their common

use, has been held not to result from the implied covenant for quiet enjoyment incident to the leases of the several portions of the building but to be of the same character as that of any other owner of real estate, who permits or invites others to use it for a particular purpose, to keep it safe for those using it within the scope of the invitation.   *Gilvon* v. *Reilly, supra; Looney* v. *McLean, supra; Vanderbeck* v. *Hendry, supra; Camp* v. *Wood*, 76 N. Y. 92.   Whatever may be the true origin and character of this obligation of the landlord it ought not to be extended beyond the uses and purposes to which it is reasonable, from the situation and nature of the building containing the demised apartments, to infer that the halls, stairways, &c., were intended to be subjected in making the leases to the respective tenants.

Now what were the reasonable uses for which the appellant as landlord was under obligation to keep in proper condition, the halls, stairways and outer doors of the building containing the office leased by him to the appellee?   It appears from the evidence that it was an office building located in the business portion of the city opposite the court-house.   With the exception of a lunchroom and restaurant on the ground floor the entire building was rented out as offices, mainly to lawyers.   The reasonable use of the outer doors, halls and stairways of such a building so located, so far at least as related to the lawyers offices, required that they should be kept open and free from improper obstruction during such hours of the day and evening as their tenants and persons having business with them might reasonably be expected to desire access to the offices.   But such use did not require that the doors, halls, &c., should be kept in that condition throughout the entire night nor on Sunday, which is a *dies non* when secular avocations are presumed to be suspended.   It certainly did not require the outer doors of the building to be kept open on Sunday to such an extent as to admit of the removal by the tenants of large pieces of furniture.   The access afforded to the building on Sunday, as shown by the evidence, through the open door and hallway on the ground floor, which con-

nected with the stairway, was in our opinion reasonable and adequate for all ordinary occasions. The occurrence of the great fire of February 7th, 1904, which destroyed the entire center of the city was a sudden and unexpected calamity. Even then at three o'clock in the afternoon when the appellee first went to his office he did not regard the danger of its destruction as serious, for he merely took from it his insurance policies and made no effort to remove its other contents until an hour and a-half later. There is no evidence that the landlord or his agent were on the premises at the time when the appellee alleges that the second-story front door was locked or were aware that the destruction of the building was so seriously threatened by the fire that any of the tenants desired to remove their furniture. Under these circumstances we are of opinion that the appellant as owner and landlord of the building discharged his obligation in reference to access to it on Sunday by having the door and hallway on the ground floor open and unobstructed.

At the close of the case the plaintiff offered one prayer and the defendant offered six. The plaintiff's prayer which related to the measure of damages in the event of a verdict in his favor was unobjectionable in form and was properly granted by the Court.

The defendant's first prayer asked the Court to take the case from the jury for want of legally sufficient evidence that the defendant or any of his agents denied the plaintiff access to his office or prevented him from removing his goods therefrom on the day of the fire. This prayer was properly rejected because, although there was no such evidence that the plaintiff was denied access to his office by anyone, there was evidence tending to prove that the only door by which the furniture could be removed was securely locked at both visits of the plaintiff to the building. If the jury had believed this evidence they might have concluded that the defendant did prevent the removal of the furniture, for the doors being under the control of his agents he was primarily responsible for their open or closed condition. The Court should therefore not have taken the case from the jury on that prayer.

There was however fatal error in the rejection of the defendant's fourth and fifth prayers. The fourth prayer asserted the proposition that as the fire occurred on Sunday and was an emergency which could not have been foreseen by ordinary care the defendant was as a matter of law under no obligation to provide at that time means of egress from the building suitable for the removal of furniture therefrom. The fifth prayer in effect instructed the jury that if they believed from the evidence that the plaintiff, at the time he attempted to remove his furniture from the building, could by reasonable efforts have opened the upper front door he was not entitled to recover. From what we have said, concerning the legal obligation as to the condition of the hallways and doors of the building resting upon the defendant as landlord, it is apparent that both of these prayers should have been granted. We find no reversible error in the action of the lower Court upon the other three prayers of the defendant.

There is an exception in the record taken, after the trial of the case, at the hearing of a motion for a new trial to the Court's refusal to grant the motion. The main ground of the motion was the fact that the plaintiff's counsel in his argument before the jury at the trial of the case had made certain statements which the defendant's counsel claimed were improper but to which he neither made objection nor took any exception at the time they were made or at any time prior to filing the motion for a new trial. It is well settled that no appeal will lie from an order granting or refusing a new trial the motion for which is always addressed to the sound discretion of the Court. Nor will a litigant be permitted to employ a motion for a new trial as a means of bringing to this Court for its review any matter occurring during the trial of the case to which objection was not made at the time of its occurrence.

For the error committed in rejecting the fourth and fifth prayers of the defendant the judgment must be reversed, and as the case made out by the record does not show the plaintiff entitled to recover no new trial will be granted.

*Judgment reversed with costs, without a new trial.*