## WEIGEL v COTTAGE BUILDING & LOAN COMPANY

Ohio Appeals, 1st Dist, Hamilton Co

No 5998. Decided Nov 10, 1941

Carl Phares, Cincinnati, and John R. Gehrig, Cincinnati, for appellee.

Stephen W. Jones, Cincinnati, and Pogue, Hoffheimer & Pogue, Cincinnati, for appellant.

## OPINION

By MATTHEWS, PJ.

The trial court rendered judgment upon a verdict in favor of the plaintiff.

The cause of action was in tort against the defendant for injuries sustained by the plaintiff through the alleged failure of the defendant to perform its duty as the owner of real estate under its control. The real estate was improved by a two-story building and a basement. The first story was designed and used for business purposes and a part was used by the defendant as an office in which to conduct its business. The second floor was divided into two apartments and at the time plaintiff received her injuries each apartment was occupied by a tenant. The basement was partitioned into rooms designed for and used for various purposes including storage, laundering, and heating. In one corner room was the laundry stove and tubs. The corner room diagonally across the basement was designed and used as a drying room for the articles that had been washed. To reach the drying-room from the laundry-room it was necessary to pass through an intervening room in which was located a furnace and stoker. The floor, which was of cement, was so constructed that the base of the furnace and stoker was fifteen inches below the level of the pit and the rest of the basement floor. The furnace and stoker did not occupy this entire pit, and thereby there was left alongside and in front an offset in the floor of fifteen inches alongside the furnace but gradually sloping up-

ward from the front of the stoker about four or five feet until it reached the level of the basement floor proper. Access to this furnace-room from the laundry was through a door of standard size some distance from one corner of this furnace pit and exit therefrom was through a similar door a somewhat greater distance from the diagonal corner, so that in taking articles that had been washed from the laundry to the drying-room a person would travel alongside and in front of the furnace and stoker.

There is no doubt that the laundry and drying-rooms were for the use of the tenants of the building and that they were so used. There is also no doubt that the tenants had the right to pass to and fro through the furnace-room in order to use the laundry and drying-rooms for the purpose for which they were designed. Indeed, there was no other way provided.

Light from the outside could only reach the furnace-room through the doors from the laundry and drying rooms, and a window with a "pitted" glass in the wall farthest away from the furnace. The basement, including the furnace-room was equipped with appliances for lighting by means of electricity.

The plaintiff had been in the laundry-room on several occasions prior to the day (January 23rd, 1939) she was injured, but had never been in the furnace-room.

On the day plaintiff was injured she entered the laundry-room through a rear door. She had been employed by the wife of a tenant to assist in the laundering and the tenant's wife had started the laundering before the plaintiff arrived. and was so engaged on plaintiff's arrival. When the articles had been washed and were ready to be hung in the drying-room they were placed in a basket, and when the basket was full they were taken to the drying-room. The tenant's wife instructed the plaintiff to take the basket of clothes to the drying-room and directed her to go straight back and turn to her left to reach the drying-

room. This she did and returned to the laundry-room. As she was proceeding with the basket of clothes on the second trip, she stepped or slipped into this furnace pit somewhere near the stoker, and the femur of her left leg was broken in the fall. In going from the laundry-room to the drying-room, it was necessary to go near this furnace pit and a slight deviation would cause one to be precipitated into it. Along the center line of the furnace-room parallel with, and two feet from the side of the furnace pit, were three beam posts about eight feet apart. There was no guard or railing around the pit.

The plaintiff did not know of the pit and she was not warned of any special hazard in going from the laundry-room to the drying-room.

Before the plaintiff arrived for work the electric lights in the laundry and drying-rooms had been turned on, but not in the furnace room, and there was no artificial light in the furnace-room while plaintiff was working or when she was injured.

The evidence is that the furnace-room was dimly lighted and that objects in it were indistinct by reason of the insufficiency of the light.

(1) In this situation we think it clear that the defendant retained control of the entire basement of this building and that it owed to the plaintiff, lawfully upon the premises as an invitee, the duty resulting from ownership and control. That duty is to exercise ordinary care to have the premises in a reasonably safe condition. 29 O. Jur., 465 et seq. 20 R. C. L. 55, et seq.

Default in the performance of this duty may result from an original defect in structural design or a change in the original safe condition to an unsafe condition. **Berkowitz v Winston, 128 Oh St 611, at 612, 193 N. E. 343; R. K. O. Midwest Corp. v Berling, 61 Oh Ap 85;** Gobrecht v Beckwith, 82 N. H. 415, 135 Atl. 20, 52 A. L. R. 858. The duty resulting from control is constant, but liability may vary depend-

ent upon the relation of the plaintiff to the premises. And liability may be defeated by defenses such as contributory negligence. The tenant and the members of his family may be precluded by the conscious assumption of the risk as well as by contributory negligence. But the knowledge or negligence of the tenant is of no avail to defeat the action of an invitee of the tenant injured through the failure of the owner in control to meet the legal requirement to use reasonable care to have the premises in reasonably safe condition. The tenant's knowledge or negligence is not imputable to the invitee. The liability of the landlord results from a direct relationship with the invitee of the tenant who in legal contemplation is the landlord's invitee. Such invitee's right is not derivative or vicarious. 2 Underhill, Landlord and Tenant, §487; Whitcomb v Mason, 102 Md. 275, 283, 62 Atl. 749; 4 L. R. A. (U.S.) 565; Siggins v McGill, 72 N. J. Law 263, 62 Atl. 411, 3 L. R. A. (U.S.) 316; Bailey v Kelly, 86 Kan. 911, 39 L. R. A. (U.S.) 379.

If we are correct as to the applicable law, then the primary issue in this case was whether the defendant had used reasonable care to have the premises in a reasonably safe condition at the time, and this issue is not complicated by any distinction between an original structual defect or defect in plan and a defect resulting from a subsequent change from an original safe condition. Applying that test to these premises—we have reached the conclusion that a basement floor with an unguarded pit fifteen inches deep in it cannot be said, as a matter of law, to be a reasonably safe construction, and that this is particularly so when the pit is in a direct line between two doors which are intended for use by persons having occasion to use the rooms into which they lead and which were designed for use requiring constant passage between them.

Upon the issue of the defendant's negligence there was ample evidence to submit to the jury.

(2) Upon the issue of contributory negligence we also are of the opinion that it cannot be said as a matter of law that the plaintiff was negligent. She was unfamiliar with the furnace-room, the light was dim and the outline of the pit was necessarily obscure. The pit was within a few inches of the path which she would have been required to travel to get from the laundry-room to the drying-room. A stumble, a trip, or a misstep would have precipitated her into the pit. Under such circumstances, it is for the jury to say whether a misstep or a departure from the path previously taken constituted action which a reasonably prudent person would not have taken.

(3) It is urged that the Court erred in giving this charge:

"An owner of a building, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee, including the lessee's employees, for bodily harm caused to them by a dangerous condition upon that part of the building retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."

The argument is that this charge is open to the objection that it assumed facts which were in issue, and was, for that reason an invasion by the court of the province of the jury. The case of **Plotkin v Meeks, 131 Oh St 493,** is relied on to support this argument. We find marked distinctions between the charge in that case, which was found objectionable, and the charge in this case. In that case the charge was directed to the effect of the application of the law to the facts of the

ease. It did not purport to state any rule of law. It assumed that the court would instruct the jury as to the law and limited itself to the effect of such rules when applied to facts,. and the vice was that it, in effect, asserted that the assumed facts were actually the facts in the case on trial. The language directly referred to the assumed facts as the acts of the plaintiff and characterized such acts as negligence.

There is no such defect in the charge here under consideration. At no point does it mention the defendant. It is abstract throughout and might have been refused on that ground, but that is no basis for reversal when given. 39 O. Jur., §318, at p. 1039. The charge is simply an abstract statement that under certain conditions a lessor is "subject to liability", that is, that the lessor's conduct is such as to expose him to liability if the other has not by his own misconduct or otherwise disabled him from maintaining an action. Restatement of Torts, §5. In other words, it states the duty of a lessor, any lessor, who retains possession of a part of the premises, toward the lessee and others lawfully upon the premises with the consent of the lessee. It does not purport to state the conditions under which the plaintiff would be entitled to recover. This charge was followed by another special charge to which no objection has been, or could be, made, in which the court instructed the jury as to the conditions under which the plaintiff would be entitled to a verdict.

We are of the opinion that the special charge is not open to the criticism directed against it, and that the defendant was not prejudiced by the action of the court in giving it.

(4) Another assignment of error is, that the court admitted evidence of changes made in the basement after this occurrence, and also evidence that another person had stepped into this furnace pit. There was no evidence that any other person had been injured as a result of stepping or falling into the pit. As to the changes, it is sufficient to say that it appears in the record that the jury viewed the premises and that made evidence on the subject competent; otherwise the jury would have been left under the impression that what they saw had existed at the time plaintiff received her injuries.

As to the evidence of another person stepping in this pit, we are of the opinion, after reading it, that it could not be regarded as of sufficient importance to justify a reversal in any event and particularly in view of the limited purpose for which it was admitted, which brought the evidence within the admissibility rule stated in **Brewing Co. v Bauer, 50 Oh St 560,** to the extent that the evidence had any probative value.

We find no prejudicial error in the record, and the judgment is, therefore, affirmed.

ROSS & HAMILTON, JJ., concur.