## THE MACKE COMPANY *v.* HOUSING MANAGEMENT COMPANY

\* \* \*

## JACK M. GOLDMAN ET UX. *v.* HOUSING MANAGEMENT COMPANY

[No. 39, September Term, 1977.]

*Decided January 11, 1978.*

426

The cause was submitted on briefs to DAVIDSON, MOORE and LOWE, JJ.

Submitted by *Hugh E. Donovan* and *Donahue & Ehrmantraut* for appellant The Macke Company. Submitted by *Courtland K. Townsend, Jr.,* and *John Burgess Walsh, Jr.,* for appellants Jack Goldman and Blanche Goldman.

Submitted by *George P. Haldeman* and *Brault, Graham, Scott & Brault* for appellees.

DAVIDSON, J., delivered the opinion of the Court.

On 2 July 1972, Jack M. Goldman was injured when he slipped and fell on the wet floor of the laundry room of the apartment building in which he lived. In the Circuit Court for Montgomery County, the appellants, he and his wife Blanche Goldman (the Goldmans), sued, insofar as here relevant, the appellee, Housing Management Company (Housing),[1] for damages and loss of consortium. At the close of the

---

1. The Goldmans' suit against The Macke Company (Macke) was settled. The parties having agreed that, as a result, the appeal in the case of The Macke Company v. Housing Management Company has become moot, and that the only matter pending before this Court is the appeal in the case of Goldman v. Housing Management Company, the appeal in the case of The Macke Company v. Housing Management Company is hereby dismissed.

Goldman's case, Judge Plummer M. Shearin directed a verdict for Housing. On appeal, the Goldmans' sole contention is that the trial court erred in granting the directed verdict.

The record shows that on 2 December 1970, the Goldmans leased an apartment in a 265 unit apartment building owned by University Towers II, a joint venture (University) and managed by Housing. That lease agreement provided in pertinent part:

> "Tenant shall not install or use any washing machine in or about the premises except coin washing machines that are placed in the building at the Landlord's direction. Tenant agrees to comply with all rules placed in effect by the Landlord for the operation of said coin washing machines." [2]

On 15 December 1971, University entered into a five year lease with Macke for the rental of a room located in the "Laundry Area" in the basement of the building. That lease provided in pertinent part that, beginning 1 February 1972, Macke would "have the sole and exclusive control and possession of the leased premises and the sole and exclusive right to install therein such automatic laundry equipment as [Macke] shall deem adequate and necessary for the use of the tenants of" the building.[3] Further, the lease provided that Macke would at all times retain title to and ownership of the equipment and have the right to remove the equipment upon termination of the lease. In addition, the lease required Macke to pay rent of "Five Hundred Dollars per month, or 50% of total monthly receipts, whichever is the greater"; to install, service and maintain laundry equipment at its own costs;[4] to assume the risk of loss or damage to the equipment; to "maintain liability insurance covering injury to persons and damage to property arising out of its negligence or fault"; and to "be responsible for such injury or damage to the extent

---

2. No rules for the operation of the machines appear in the record extract.

3. The record does not contain any evidence to show that the laundry room was used for any other purpose by Macke, University or Housing.

4. Posted in the laundry room was a phone number to call for refunds or service. A call to this number did not involve Housing. It may be assumed that the posted number was Macke's.

of its insurance coverage." The lease further required University to prohibit the installation or use of other laundry equipment in the building;[5] to light the area "upon and adjacent to that which the automatic laundry equipment is located"; to furnish all utilities and facilities required to operate the equipment; to notify Macke if and when the equipment ceases to operate normally, and to "provide janitorial services and maintenance for the area adjacent to that upon which the equipment is located." Pursuant to an oral agreement between Housing and Macke, janitorial services in the laundry room itself were performed by employees of Housing who were paid by Macke for providing these services.

I

In a negligence action, it is necessary to show a duty or obligation to protect from injury, a failure to discharge that duty, and that that failure was the proximate cause of injury or loss.[6] Here the Goldmans contend solely that the evidence was sufficient to show that Housing had a duty to protect them from injury in the laundry room.

The Court of Appeals and this Court have recognized that a landlord has an obligation to use reasonable care to protect tenants from injury in those portions of the premises used in common by the tenants and controlled by the landlord.[7] Thus the Court of Appeals has said:[8]

"Where a landlord leases separate portions of a property to different tenants and reserves under his control ... parts of the property for use in common by all the tenants, he must use ordinary care and diligence to maintain the retained parts in reasonably safe condition. ... The duty stems from the responsibility engendered in the landlord by his

5. Tenants were given keys to the laundry area.

6. Scott v. Watson, 278 Md. 160, 165, 359 A. 2d 548, 552 (1976); Peroti v. Williams, 258 Md. 663, 669, 267 A. 2d 114, 118 (1970).

7. Scott v. Watson, 278 Md. 160, 165, 359 A. 2d 548, 552 (1976); Whitcomb v. Mason, 102 Md. 275, 282, 62 A. 749, 751 (1906); Bernstein v. Reforzo, 37 Md. App. 724, 729, 379 A. 2d 181, 185 (1977).

8. Landay v. Cohn, 220 Md. 24, 27, 150 A. 2d 739, 740-41 (1959).

having extended an invitation, express or implied, to use the portions of the property retained by him." (Citations omitted.)

In accord with this principle, landlords have been held liable for improper maintenance of facilities and for failure to remedy defects in equipment controlled by them and furnished for common use by the tenants.[9]

In Maryland, no standard has been articulated by which to determine whether a landlord has reserved control over property used in common. It has been said that a landlord is in control of premises used in common if he has "the authority to manage, direct, superintend, restrict or regulate." [10] Generally, the question of whether a landlord has reserved control is one of fact. Whether a landlord has retained control over the premises is essentially a matter of intention [11] to be determined in the light of all the significant circumstances, particularly the leases and practices of the parties.[12]

Here the evidence, viewed in the light most favorable to the Goldmans,[13] was more than adequate to show that the parties intended Macke to control the leased laundry room. The lease between Macke and Housing specifically provided that Macke would: 1) control and possess the leased laundry area; 2) hold title to all of the laundry equipment; 3) service and maintain the equipment; 4) remove the equipment upon expiration of the lease; and 5) carry liability insurance. As a matter of practice, Macke maintained the laundry area.

In contrast, there was no evidence to show or support a rational inference that the parties intended Housing to

9. Macke Laundry Service Co. of Maryland v. Weber, 267 Md. 426, 431, 298 A. 2d 27, 30 (1972); Kinnier v. J.R.M. Adams, Inc., 142 Md. 305, 307-08, 120 A. 838, 839 (1923).

10. Kirby v. Zlotnick, 278 A. 2d 822, 824 (Conn. 1971).

11. Kirby v. Zlotnick, 278 A. 2d 822, 824 (Conn. 1971).

12. See Kinnier v. J.R.M. Adams, Inc., 142 Md. 305, 308-09, 120 A. 838, 840 (1923). Accord, Kirby v. Zlotnick, 278 A. 2d 822, 824 (Conn. 1971); Gula v. Gawel, 218 N.E.2d 42, 44-45 (Ill. App. 1966); Busick v. Home Owners Loan Corp., 18 A. 2d 190, 191 (N.H. 1941); Ritto v. Goldberg, 265 N.E.2d 772, 773-74 (N.Y. 1970); DeClara v. Barber Steamship Lines, 132 N.E.2d 871, 876 (N.Y. 1956); Fort Worth & D.C. Ry. v. Mills, 140 S.W.2d 513, 516-17 (Tx. Ct. App. 1940).

13. Beahm v. Shortall, 279 Md. 321, 341-42, 368 A. 2d 1005, 1017 (1977); Baulsir v. Sugar, 266 Md. 390, 394-95, 293 A. 2d 253, 255 (1972); Keene v. Arlan's Dep't Store of Baltimore, Inc., 35 Md. App. 250, 253-54, 370 A. 2d 124, 126-27 (1977).

control the leased laundry room. The facts that the lease between Housing and the Goldmans prohibited them from using washers on the premises other than those "placed in the building at the Landlord's direction," and that tenants were given keys to the laundry room, indicate that the landlord intended to provide a common laundry area, but do not indicate that the landlord itself intended to control that area. While that lease required the Goldmans to comply with rules "placed in effect" by the landlord, the record does not show that any such rules were made. Moreover, the subsequent lease between Housing and Macke contains no authorization for Housing to promulgate such rules. Under these circumstances, there is nothing to show that Macke or Housing intended the latter to control the laundry room through the promulgation of rules.

The lease between Housing and Macke provided that Housing would furnish lights and utilities to the laundry room, provide maintenance and janitorial services to adjacent areas, and notify Macke when the equipment stopped operating. Housing fulfilled the latter obligation by installing in the laundry room a telephone connected to its switchboard. This phone was used by tenants to register their complaints, which were then forwarded by the switchboard operator to Macke. Finally, the lease provided that the landlord could, under certain circumstances, receive 50 percent of Macke's total monthly receipts as rent. These factors, either alone or in combination, are, under the present circumstances, too insignificant to establish that Macke or Housing intended Housing to retain control over the leased laundry room.

Thus, there was insufficient evidence to show that the landlord had "the authority to manage, direct, superintend, restrict or regulate" the leased laundry room. Accordingly, the evidence was insufficient to establish that Housing had a duty to protect the Goldmans from injury in the laundry room. The trial court did not err in granting Housing's motion for a directed verdict.

II

The Goldmans next contend that Housing owed them an

additional duty of care arising from their "voluntary assumption" of the task of receiving and transmitting to Macke tenants' complaints about the laundry area and equipment. They maintain that Housing's failure to discharge this obligation is actionable negligence. They conclude that the trial court erred in granting Housing's motion for a directed verdict. We do not agree.

The record shows that on 2 July 1972 Mr. Goldman fell on a wet area of the laundry room floor. There was a stream of water, three or four inches wide, coming from washer 35. A tenant had complained to the switchboard operator six or seven times between 1 January 1972 and 2 July 1972 that washer 35 leaked. On or about 3 July 1972, Macke made a service call and found that washer 35 had a broken pump gasket, a defect which could have resulted in sufficient leakage to form a puddle of water. This evidence did not show or support a rational inference that Housing failed to transmit the complaints about washer 35.

In contrast, there was evidence to show that the bulk of service calls from the building came from the desk or management. Although some of Macke's service records for the period in question had been destroyed, the remaining records showed "various service calls at the apartment" between 11 May 1972 and 22 June 1972.

Under the present circumstances, even if we assume that Housing owed the Goldmans a duty of transmitting complaints, the evidence was insufficient to establish that Housing had failed to discharge that duty. The trial court did not err in granting Housing's motion for a directed verdict.[14]

> *Judgment as to Housing Management Company affirmed.*
> *Costs to be paid by appellants.*
> *Appeal of The Macke Company dismissed.*
> *Costs to be equally divided between the parties.*

---

**14.** The questions of whether a landlord may delegate a duty of care or whether an apparent agency existed between Macke and Housing were not raised and are not decided here.