JOYCE, APPELLANT; *v.* UNION CARBIDE & CARBON
CORP., APPELLEE.*

(No. 25431—Decided March 30, 1961.)

*Motion to certify the record overruled, October 4, 1961.

*Mr. Edward M. Joyce*, for appellant.

*Messrs. Baker, Hostetler & Patterson* and *Mr. Russell E. Leasure*, for appellee.

HURD, J. This is an appeal by plaintiff, appellant herein, from a judgment of the Court of Common Pleas of Cuyahoga County entered upon a directed verdict in favor of defendant, appellee herein, at the close of plaintiff's case. For brevity, the parties will be designated as plaintiff and defendant as they appeared in the trial court.

The action is for damages for personal injuries in the nature of body burns suffered by the plaintiff, a steam fitter, while on the premises of the defendant, the plaintiff being in the employ of the B. F. Shaw Company, an independent contractor, engaged by defendant to install prefabricated cast-iron pipes and fittings on three tanks which were located at the south end of boiler No. 4 in the power plant of the Electro-Metallurgical Company Division of the defendant, located in Ashtabula, Ohio.

The record shows that the plaintiff's work brought him into close proximity to the boilers which were in operation in the defendant's plant, and, at the time of the accident and resulting injuries complained of and for a period prior thereto, he had been working in an area close to boiler No. 4, the scene of the accident. Neither the plaintiff nor the independent contractor, for whom he worked on the premises, had any duty of any kind in connection with the boiler operation. The boiler had a door opening, the center line of which was in the center of the south side of the boiler about five feet and five inches above the floor on which the plaintiff was working. The opening was approximately 18 inches in diameter and had an iron door cover about three-fourths of an inch thick and 22 or 23 inches in diameter. This door cover was hinged on the east side and could be securely shut by three equidistant heavy two-inch-thick "dogs" or lugs which swiveled onto the cover. These lugs weighed about one to two pounds each and were shaped like an arm on a swivel and were constructed of solid metal. The plaintiff testified that the lugs "had to be pretty fair size because a man has to grab a handle with his fist * * * and give it a spin and pull it down. It is on the inside of the arm and is a graduated slope, it just starts and gets thicker and it pushes the door in, the whole

three of them. It is a sure lock, it is a dog, they call it, a door lock.'' At the time of the injury, the plaintiff had just returned from lunch with his fellow worker and both were examining fittings and valves located on the floor close to the boiler "trying to figure" if they had made a mistake in some of the fittings in connection with their work. They studied their blueprints but could not find where they had "left out any elbow or tee or anything real serious." At this particular time, there was an employee of the defendant peering into the boiler bottom through the door. The door was open and defendant's employee had a long bar which he thrust into and pulled out of the boiler about six or seven times. The record indicates that he engaged in this operation about four times while the plaintiff was close to the area, the door being open for from 35 to 40 minutes. The purpose of defendant's employee's action was to dissolve a sludge accumulation in the boiler. He would then drop the bar and would run around to the east side of the boiler where there was a funnel sight glass through which it was possible to see the action within the boiler. There were no markings on the floor to indicate where plaintiff should or should not work or signs on the walls with any warnings to indicate danger. While plaintiff was working within this vicinity, after he had returned from lunch, an employee of the defendant, by the name of Dewey, was conducting the operation of thrusting the iron bar into the boiler to remove sludge in the manner described. The defendant's employee left the door open while he ran around to the vicinity of the sight glass located on the east side of the boiler. It was on one of these occasions when the door was left open—the employee being at the other side of the boiler—that suddenly, without any warning of any kind, there erupted from the open door of the boiler white hot molten ashes which struck the plaintiff in the face, the neck, both sides of the chest and arms, causing him to stagger, reel and fall down screaming due to severe pains inflicted by the hot ashes. While the plaintiff was still on the floor, immediately after the occurrence, defendant's employee came around, closed the door with the lugs and then went back in the same direction in which he had come without attempting to help plaintiff in any way. The plaintiff tried to get up, fell down again, reeled back and grabbed hold of the top corner of the rectangular tank. During

all this time he was, to quote him, "hollering and trying to get the ashes off the back of my neck and head—trying to lift my shirt up—felt as though I was on fire—from this point I crawled along (indicating on a map) hanging on to the top of the rectangular tank, trying to get the ashes off my neck and face," etc. He received some help from his coworker, Snyder, who then went to tell the steward and foreman. Thereafter, the shop steward, the shop foreman and another foreman—three or four men—lifted him bodily, laid him on a table where he remained for about 15 or 20 minutes until the ambulance came. The driver placed a blanket around him, put a sheet around his head and took him to the hospital. The record indicates that plaintiff was seriously injured as a result of the accident.

The assignments of error are as follows:

"1. The court erred in granting defendant's motion to strike petitioner's interrogatories from the files.

"2. The court erred when it granted defendant's motion for a directed verdict and ordered judgment thereon.

"3. The court erred in denying petitioner's motion for a new trial."

Under the first assignment of error, the plaintiff claims that the court committed prejudicial error in sustaining defendant's motion, filed on June 24, 1960, to strike the interrogatories filed by Edward W. Joyce. We can not consider the legal sufficiency of the evidence relied upon by the trial court in sustaining defendant's motion to strike plaintiff's interrogatories, where such evidence is not made a part of the bill of exceptions. An examination of the bill of exceptions shows no record containing such evidence. See *Allstate Ins. Co.* v. *Dye*, 113 Ohio App., 90, decided by this court December 15, 1960.

This brings us to a consideration of the second assignment of error, namely, that the court erred when it sustained the motion of the defendant to direct a verdict and entered judgment thereon.

It is a fundamental proposition of law, too well established in Ohio to require the citation of any extended authorities, that, upon a motion to direct a verdict, the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor, and, where, from the evidence, reasonable minds may reach different conclusions upon any question of

fact, such question of fact is for the jury, and the test is not whether the trial judge would set aside the verdict on the weight of the evidence. *Hamden Lodge* v. *Ohio Fuel Gas Co.*, 127 Ohio St., 469; *Wilkeson, Admr.*, v. *Erskine & Son, Inc.*, 145 Ohio St., 218; *Purdy, Admr.*, v. *Kerentoff*, 152 Ohio St., 391.

The evidence shows clearly that plaintiff was an invitee, being an employee of an independent contractor working on the premises of the defendant, the possession and control of which were retained by the owner. Under such circumstances, the owner owes to the invitee the duty of exercising ordinary care in maintaining the premises in a reasonably safe condition and of informing the invitee of hazardous conditions of and activities on the premises unknown by and not obvious to the invitee. *Bosjnak* v. *Superior Sheet Steel Co.*, 145 Ohio St., 538.

Previous to his injury, and during the time in which he worked on the premises, plaintiff had never witnessed any eruption of white ashes from the door of the boiler. As the plaintiff was the only witness for himself, his testimony for the purpose of the motion by the defendant for a directed verdict at the close of plaintiff's case must be accepted as true. On this point, the record shows the following:

"The Court: May I clear up one point? Did you or did you not see white hot cinders come out there before the accident, come out of the door?

"The Witness: I saw them when they came before me.

"The Court: No, before the accident, in the weeks before when you worked there?

"The Witness: Oh, no; no, Your Honor."

In view of the fact that the court sustained the motion to direct a verdict and rendered judgment thereon, it was the duty of the trial court and it is also the duty of this court, upon review, to consider only the evidence of the plaintiff, granting to it the most favorable intendment from the facts and reasonable inferences which may be drawn therefrom. The evidence of the plaintiff shows that he had no warning of the dangerous condition which resulted in his injuries. He had observed the employee of the defendant perform the operation of thrusting the sludge by means of the iron bar for some considerable time previous to the accident in this case, and no eruption of hot ashes had occurred on any previous occasion. The evidence shows

that the work at the Electro-Metallurgical plant was in full operation while the plaintiff was working on the premises, and that the instrumentality causing the injury was conclusively shown to have been within the exclusive management and control of the defendant. Neither the independent contractor nor his employee, the plaintiff herein, had anything to do with the operation of the boiler.

It is our view that the trial court should have considered and applied the doctrine of *res ipsa loquitur*, not as substantive law but as a rule of evidence, in passing upon the motion for a directed verdict at the close of plaintiff's case. The evidence showed that the instrumentality causing the injury was in the exclusive custody, control and management of the defendant, and the facts and circumstances were of such a character as to warrant the conclusion that the accident and resulting injuries would not have occurred if ordinary care had been observed by the defendant. *Schafer* v. *Wells*, 171 Ohio St., 506, decided February 23, 1961; *Renneckar* v. *Canton Terminal Restaurant, Inc.*, 148 Ohio St., 119; *Soltz* v. *Colony Recreation Center*, 151 Ohio St., 503.

Paragraph one of the syllabus of the *Schafer case, supra*, is as follows:

"1. *Res ipsa loquitur*, as a rule of evidence permitting but not requiring the jury or, where there is no jury, the trial court to draw an inference of negligence, may be applicable in a case where the instrumentality causing the injury is shown to have been within the exclusive management and control of the defendant and where the circumstances attending the injury were of such a character as to warrant the conclusion that, in the ordinary course of events, such injury would not have occurred if ordinary care had been observed. (Paragraph one of the syllabus of *Renneckar* v. *Canton Terminal Restaurant, Inc.*, 148 Ohio St., 119, and paragraph one of the syllabus of *Soltz* v. *Colony Recreation Center*, 151 Ohio St., 503, approved and followed.)"

The elements necessary to the application of the doctrine of *res ipsa loquitur*, as set forth in the *Schafer case, supra*, namely, exclusive control and management of the instrumentality causing the injury, are certainly present in this case. There is no evidence that the perils or dangers were known to the plain-

tiff, although the inference is inescapable that they were known, or should have been known, to the defendant as the owner in control of the premises and the operator of the instrumentality causing the injury.

We have examined the cases on the subject of *res ipsa loquitur* cited by defendant. The case of *Bates* v. *Cleveland Electric Illuminating Co.*, 85 Ohio Law Abs., 345, is not in conflict with our view in this case. Neither are the cases of *Union Gas & Electric Co.* v. *Waldsmith*, 31 Ohio App., 118, *Kaltenbach* v. *Cleveland, Columbus & Cincinnati Highway, Inc.*, 82 Ohio App., 10, and *Welch* v. *Rollman & Sons Co.*, 70 Ohio App., 515. We think that the circumstances attending the injury were of such a character as to warrant the conclusion that in the ordinary course of events the injury would not have occurred if ordinary care had been observed. In this connection, while we direct particular attention to the failure of defendant's employee to close the fly ash door, when he left, from which the eruption of hot ashes came, there still is no explanation of the cause of such eruption, which must be known to the defendant alone. Neither is there any explanation of why an operation such as the thrusting of sludge was being carried out while the plaintiff was in such close proximity to the danger zone and within sight of the defendant's employee who was conducting the operation.

The defendant argues by way of brief that, because specific acts of negligence are pleaded by plaintiff, "the doctrine of *res ipsa loquitur* is not applicable under the pleadings here." This argument is untenable by reason of the following clear statement of the Ohio law made by Bell, J., speaking for a unanimous court in *Fink* v. *New York Central Rd. Co.*, 144 Ohio St., 1, 7:

"In some jurisdictions it is held that a plaintiff who relies upon the rule of *res ipsa loquitur* is not permitted to plead specific acts of negligence in his petition. If he does plead any specific acts of negligence he is denied the benefit of the rule. This state has adopted the rule, which is supported by the great weight of authority, that if the allegations of the petition and the proof in support thereof call for the application of the rule it should be applied irrespective of whether the petition contains allegations of specific acts of negligence."

In that case, the Supreme Court followed and approved

*Glowacki, a Minor,* v. *North Western Ohio Ry. & Power Co.,* 116 Ohio St., 451. The *Fink case* in turn was followed and approved in *Soltz* v. *Colony Recreation Center, supra* (151 Ohio St., 503).

During the course of oral argument in this court, defendant's counsel made statements to the effect that if they had been able to put on their defense, they would have been able to show facts which would exculpate the defendant. However, the defendant's evidence was not put on, and we cannot consider such statements on this appeal.

The brief of the defendant argues the proposition of contributory negligence, but, upon a careful reading of the bill of exceptions, we fail to find any evidence showing contributory negligence on the part of the plaintiff. The state of the case is such that if contributory negligence is to be a defense, it should be raised by the defendant as an affirmative defense.

Numerous cases are cited by defendant, such as *Wellman* v. *East Ohio Gas Co.,* 160 Ohio St., 103, *Union Tank & Supply Co.* v. *Kelley,* 167 F. (2d), 811, and other cases, the purport of which is nonliability of the owner of the premises for injuries resulting to employees of independent contractors in performing work, where there is "real or potential danger" as an incident to the performance of the work. An analysis of those cases shows they are not applicable here, the distinguishing feature being the dangerous condition of the work itself. For example, in the *Wellman case,* an employee of an independent contractor was injured during the removal of a cap from the end of a gas pipe, during the process of which the cap blew off, due to the pressure of gas which had seeped through the gate valve, striking the plaintiff on the legs, causing a fracture of one of them. It should be noted here that it was the very instrumentality on which the work was being done which caused the injury. That case and similar cases must be distinguished from the instant case where the injury occurred from an instrumentality entirely disassociated from the plaintiff's work. No good purpose would be served by analyzing the numerous cases cited which we find inapplicable to the facts here on defendant's motion for a directed verdict at the close of plaintiff's case. Other cases are cited which deal with open, obvious, and apparent dangers known to the workmen, which is not the case here.

In view of the time the plaintiff had been on the job without

any similar occurrence and the fact that the boiler door had been open for as long as 35 to 40 minutes at a time without any such eruption of white hot ashes, it cannot be said on plaintiff's testimony alone that the danger was obvious to him or his fellow worker.

It is our conclusion that the court committed error prejudicial to the rights of the plaintiff in sustaining the motion for directed verdict at the close of plaintiff's case and entering judgment thereon and in failing to sustain the motion for new trial, for which reason the judgment is reversed as contrary to law and the cause remanded for further proceedings according to law.

*Judgment reversed.*

KOVACHY, P. J., and SKEEL, J., concur.