SALEMI, PLAINTIFF-APPELLEE, *v.* DUFFY CONSTRUCTION CORPORATION, DEFENDANT-APPELLANT.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26635. Decided March 26, 1964.

Messrs. *Dudnik, Komito, Nurenberg, Plevin, Dempsey & Jacobson, Mr. Marshall I. Nurenberg,* for plaintiff-appellee.
Messrs. *Arter, Hadden, Wykoff & Van Duzer, Mr. Smith Warder,* for defendant-appellant.

WASSERMAN, J. This case is before this court on an appeal on questions of law from a jury verdict of $185,000.00 and judgment entered thereon in the Court of Common Pleas of Cuyahoga County against defendant, Duffy Construction Corporation, in favor of the plaintiff, Peter L. Salemi. For the purpose of brevity, Peter L. Salemi, plaintiff-appellee, will hereafter be referred to as plaintiff and Duffy Construction Corporation, defendant-appellant, will be referred to as defendant.

Plaintiff was an individual engaged in the business of grading and excavating contract work under the name of the Central Excavating Company. Defendant had entered into a general contract with the General Electric Corporation for the construction of a plant on premises bordering on Highland Road in the Village of Richmond Heights in Cuyahoga County.

Plaintiff obtained a subcontract from the defendant to perform the excavating and grading work on the project. The property in question was located to the south of Highland Road. These premises contained a driveway leading from Highland Road. The driveway was approximately 12 to 15 feet wide and approximately 400 feet long. The terrain on each side of the driveway was level for an estimated 20 feet. Throughout the proceedings in the trial court this driveway was referred to as "the existing driveway" and was used by all persons engaged in the work on the construction project.

The plan for construction called for a new driveway to the east of the existing one and parallel to the one in use. It was intended to replace the existing driveway when the new driveway had reached a point in construction when the sub-base was laid down. The existing driveway would then be excavated for the purpose of placing a storm sewer within the excavation and would then be recovered.

The testimony indicates that on October 7, 1956, at 6:00 P. M., the sub-base had not been laid down on the new driveway and the existing driveway was still in full use.

At the time of the accident, there were three contractors concerned with the undertaking. These were the defendants as the general contractor, the plaintiff as the grading and excavating contractor, and the Norton Construction Company as the sewer sub-contractor.

Prior to the time of the accident, the Norton Construction Company was occupied with a trench excavation near Highland Road approximately 450 feet west of the existing driveway. On this job it was using a device called a backhoe. The plaintiff had placed grading and excavating equipment on the premises.

The defendant was to erect a field office and was to provide temporary toilet facilities under its General Electric contract. The location of these facilities was not shown on any plans with which the plaintiff was familiar. The location of the field office, and the septic tank to be used by the toilet facilities, was left to the discretion of the defendant subject only to the approval of the General Electric Company.

The contract between the defendant and the General Electric Company was a guaranteed maximum contract with a com-

pletion clause. The completion clause provided: "Time is of the essence of the contract." It further provided that if the cost of the work, plus fixed fees, be less than the guaranteed maximum, the difference representing the saving was to be apportioned to a specific percentage between the defendant and the General Electric Company.

Plaintiff, through his subcontract, had a unit price agreement under which he was to be paid in accordance with the amount of earth moved rather than on a time basis. There was a schedule prepared by the defendant in the plaintiff's contract which contained a "time is of the essence clause."

There was testimony that the plaintiff was under pressure from the defendant. He, therefore, kept his crew working six days a week with overtime everyday of the week. Francis F. Duffy, President of the defendant corporation, testified that his construction supervisor kept a separate sheet of plaintiff's progress and the amount of equipment plaintiff had on the job "due to the fact that winter was not far away and we wanted to have the work progress so that we could get our foundation in and our steel erected before the very bad weather set."

The evidence shows that the plaintiff would personally visit the scene of his various projects to check with his works' foreman, that on Saturday, October 6, 1956, plaintiff visited the scene of this project, arriving at approximately 1:30 P. M., and that his purpose in going to the premises was to make the necessary field changes on the job and to discuss these with his on-the-job foreman and to discover if the defendant construction superintendent wanted anything particularly done. It also shows that at the time of the plaintiff's visitation, the weather was dry as it had been during the course of the work on this project and that he noticed that the backhoe of Norton was still working near Highland Road approximately 450 feet from the existing driveway.

The evidence establishes that late in the afternoon of October 6th, defendant's construction superintendent decided to have constructed an excavation for the septic tank system, that the temporary field office had already been substantially erected at a distance of 26 feet west of the existing driveway, that Mr. Kenneth C. Olsen, the defendant's superintendent, arranged with Norton to lease his backhoe and crew for the time neces-

sary to make the excavation, that Norton proceeded to make the excavation in accordance with instructions and location designated by Mr. Olsen. It is undisputed in the record that the crew making the excavations was at all times under the direction and control of defendant and was acting as its agents and employees. The evidence further indicates that the septic tank excavation was dug along the westerly side of the existing driveway approximately 200 to 300 feet south of Highland Road, that this hole was approximately 6 to 8 feet wide, 10 to 12 feet long and about 7 feet deep, that to the north of the septic tank excavation and forming a part of it was a filter bed trench which was approximately the same width but not so deep, and that this trench ran parallel to the existing highway for a distance of 30 feet. According to Mr. Duffy's testimony, the easterly border of the hole was within inches of the driveway. The evidence also indicates that the plaintiff was completely ignorant of these arrangements, that the continued use of the existing driveway resulted in the driveway being packed down together with the adjacent terrain so that there was no well-defined border to the driveway, that after the Norton Crew finished the work for the defendant, the backhoe was returned to its former position as hereinbefore described, that Norton was paid by the defendant for the time used to make these excavations, that at the close of the construction day, Saturday, October 6, 1956, the septic tank hole and adjacent filter bed trench had been completely constructed and was left without any form of barricade or warning lights, and that the fill from the excavation was placed on the westerly side of the trench in the form of a windrow of earth.

The evidence also establishes that Saturday night, October 6, 1956, it rained hard and that mud caused by heavy rain materially affects work of an excavating contractor, necessitating change in the plan and procedure of his work. Plaintiff testified that one of his reasons for going to the premises the day of the accident was to consider the necessity of such change and to make arrangements with his foreman so that the work would proceed smoothly Monday morning. There was testimony that it was not uncommon for excavating and grading contractors to visit the premises after normal working hours in order to determine changes and thereby avoid delay.

Plaintiff also testified that when he arrived on the premises on Sunday, October 7, 1956, the gate across the existing driveway was unlocked and open, that he parked his car near the entrance of the existing driveway and proceeded to walk along the existing driveway in a southerly direction, and that he fell into the septic tank hole, sustaining serious injuries. Plaintiff described the condition of visibility at the time of his arrival as enough natural light, although it was very dull, so that he could see the ground immediately in front of him. He denied seeing the hole at anytime before he fell into it. Plaintiff claimed that he could not distinguish the hole from the surrounding area because all the ground looked the same as the space of which the hole consisted and was indistinguishable in appearance from the solid ground on which he had been walking, that there was no barricade or lights around the hole in which he fell, and that he had no previous knowledge of the existence of the hole before he fell into it or any indication that such a hole was to be dug or that it was to be located where it was between the time he visited the premises on Saturday afternoon and Sunday when he returned and the accident occurred.

Plaintiff also testified that excavations, such as a septic tank hole and a filter bed trench, which were temporary excavations, were not part of the construction specifications, and are customarily barricaded or otherwise protected and that the plans and specifications did not call for excavations in the vicinity of the existing driveway at that particular time.

The defendant denied any duty, custom, or practice to barricade or otherwise guard such excavation as the one in question, thereby creating a question of fact for the jury which was obviously resolved against the defendant.

As a special affirmative defense, the defendant has pleaded that in the subcontract between the plaintiff and defendant there is contained an indemnity provision which reads as follows:

"(b) The subcontractor shall at all times indemnify and save harmless the Contractor and the Owner on account of any and all claims, damages, losses, litigations, expenses, counsel fees and compensation arising out of injuries (including

death) sustained by or alleged to have been sustained by the servants, employees, or agents of the Owner or the Subcontractor or the Contractor, other Subcontractors or material men, and from injuries (including death) sustained by or alleged to have been sustained by the public servants, employees, agents of the public, any or all persons on or near the work, or by any other person or property, real or personal, caused in whole or in part by the acts or omissions of the Subcontractor, Subcontractor's material men, or any other directly or indirectly employed by them, or any of them, while engaged in the performance of this subcontract. * * *''

It was conceded by both parties to this appeal that the foregoing clause raised a question of law rather than a question of fact for the determination of the jury. The court, upon motion of the plaintiff seasonably filed, thereupon, determined as a matter of law that the foregoing indemnity provision had no application to the facts of the case and eliminated this defense in submitting the cause to the jury.

Plaintiff's petition alleges three specifications of negligence:

''1. In constructing said excavation in close proximity to the customarily used pathway of ingress and egress to and from the premises;

''2. In failing to barricade and provide warning lights and other means of effective warning of the construction and existence of said excavation which it knew to be in close proximity to the usual pathway of ingress and egress.

''3. In constructing and maintaining an unguarded excavation in close proximity to a regular pathway used and known by the defendant to be used for ingress and egress.''

To the petition of the plaintiff, the defendant filed its amended answer which denies all allegations of negligence and affirmatively pleads the defenses of contributory negligence and assumption of risk and the indemnity provision of the contract. The trial court struck the affirmative defense of assumption of the risk and the defense of the applicability of the indemnity provision, holding as a matter of law that these issues were not in the case. The affirmative defense of contributory negligence was submitted to the jury as a question of fact along with the claims of negligence set forth by plaintiff.

Defendant complains of error in the record and proceedings prejudicial to its rights in the following assignments of error:

"1. The trial court erred in overruling defendant-appellant's motion for a directed verdict made at the close of plaintiff's evidence and renewed at the close of all the evidence.

"2. The trial court erred in overruling defendant-appellant's motion for judgment notwithstanding the verdict of the jury.

"3. The trial court erred in submitting to the jury the question of whether plaintiff-appellee was an invitee on the premises at the time of the accident, and in failing to hold as a matter of law that plaintiff was a mere licensee.

"4. The trial court erred in striking the First Separate Defense which was based upon the indemnity provision contained in plaintiff-appellee's contract with the defendant-appellant.

"5. The trial court erred in refusing to submit to the jury the issue of plaintiff's assumption of risk.

"6. The trial court erred in submitting the issue of defendant-appellant's negligence to the jury.

"7. The trial court erred in submitting the issue of plaintiff-appellee's contributory negligence to the jury.

"8. The verdict and judgment are against the manifest weight of the evidence.

"9. The trial court erred in admitting certain evidence over the objection of defendant-appellant seasonably made.

"10. The trial court erred in giving plaintiff's special request to charge Numbers 2, 3, 4 and 7.

"11. The trial court erred in refusing defendant's special instructions Numbers 8, 9, 10, 11, and 12.

"12. The trial court erred in its general charge to the jury.

"13. Other errors apparent on the face of the record, to the manifest prejudice of defendant-appellant."

If the plaintiff merely enjoyed the status of a licensee upon the premises at the time of his accident, he would have no case. Assignments of error 1, 2, 3, 6 and 7 raise the question of whether the evidence establishes that the plaintiff had a prima facie case for the jury's consideration.

After a careful consideration of all the evidence in the light of the applicable principles of law, we are of the opinion that this case was correctly a case for submission to a jury under a proper charge.

There is a sufficiency of evidence to establish that plaintiff's purpose in being upon the premises was ultimately connected with the proper performance of the subcontract between plaintiff and defendant under the conditions imposed by the defendant upon plaintiff to expedite the work with all due haste. The evidence establishes a direct pecuniary benefit to defendant by such compliance on the part of the plaintiff.

It was for the jury to determine whether it could be foreseen that the plaintiff would have occasion to visit the premises after a heavy rain necessitated a change in his field plans in order to properly perform the work under his contract. Defendant's agent, Olsen, conceded that heavy mud does affect the work of grading and excavating subcontractors.

There is an abundance of authority that one working under a subcontract visiting construction premises for a proper purpose concerned with the performance of that contract enjoys the status of a business visitor as to the person in general control of the premises. There was no dispute in this case but that the defendant was in general control of the premises. In 39 Ohio Jurisprudence (2d), 563, Negligence, Section 51, it is stated:

"According to the Supreme Court, an 'invitee,' in tort law, means a business visitor, that is, one rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest. * * *"

See *Scheibel* v. *Lipton*, 156 Ohio St., 308, 102 N. E. (2d), 453.

The plaintiff as a subcontractor doing business as an individual proprietor enjoys the same rights as a business visitor. See also *McGeary* v. *Reed*, 105 Ohio App., 111, 151 N. E. (2d), 789; *Joyce* v. *Union Carbide & Carbon Corp.*, 114 Ohio App., 51, 173 N. E. (2d), 692.

Defendant contends that even if it be conceded that plaintiff was a business visitor and entitled to have defendant exercise the common law duty of ordinary care for his protection,

that this duty does not extend to barricading or providing warning lights as to an excavation of the type here involved, well within private property, and that in any event, the facts establish plaintiff's contributory negligence as a matter of law.

We are of the opinion that the common law duty of a possessor of land to business visitors with regard to excavations adjacent to traveled pathways on private property is applicable to the facts in this case and is stated in 38 American Jurisprudence, 790, Negligence, Section 130, as follows:

"* * * The duty which an owner or an occupant owes to one using a way upon the premises by invitation is such that the owner or occupant cannot make excavations or leave unprotected openings so close to the line of way as to render travel thereon unsafe, without incurring liability to the invitee for injury sustained by him from such dangerous condition. This does not mean, however, that an invitee can hold the owner or occupant liable for an injury received by him while deviating materially from the way covered by the invitation. It does mean that one who leaves a dangerous excavation on his property cannot avoid liability for injury to one who, coming upon the premises on business, is injured by falling into it, on the theory that it was not in the path which he was entitled to travel, if it was so close thereto that he could not transact his business without coming in such proximity to it as to render it perilous to him."

*Weigel* v. *The Cottage Building & Loan Co.*, 68 Ohio App., 467, 42 N. E. (2d), 171, is in accord with this position. See also: *Colarossi* v. *Anderson Concrete Corp.*, 175 Ohio St., 321, in which the propriety of submitting such a question of fact to a jury was reaffirmed.

We believe an unguarded septic tank hole and filter bed trench, constructed as it was in such close proximity as to be virtually encroaching upon the main ingress and egress route, constituted a dangerous condition, existing on a part of the premises used by persons authorized to use them. It is a fundamental concept of tort law that if the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not pre-

vent him from being liable. See Restatement of the Law of Torts, 1173, Section 435. The jury could certainly find here that the excavation as it was, on the spur of the moment, constituted a foreseeable risk of harm to defendant's business visitors of which this plaintiff could rightfully be found to be one.

We need not decide whether the question of plaintiff's status was one of law or one of fact inasmuch as the trial judge, under proper instruction, submitted the issue to the jury as a question of fact, and the jury resolved it against the defendant.

Defendant urges that under controlling authorities this court must hold as a matter of law that the plaintiff was chargeable with contributory negligence and, therefore, on that ground alone, the case should have been taken from the jury. Defendant argues that if it was too dark for plaintiff to see where he was walking, he obviously had no right to use the pathway, relying on natural light, and if he could see where he was walking, it must be held as a matter of law that the hole into which he fell, in its open, unguarded state, was an obvious hazard to be seen and avoided.

Defendant cites to this court as controlling, the recent decision of *Fogle* v. *Shaffer*, 167 Ohio St., 353, 148 N. E. (2d), 687, which clearly holds that one who steps into a hole which he could easily have seen if he had looked, cannot recover for injuries that follows. The decision in the *Fogle case* is based on the fact that the plaintiff was not looking where she was going, but was looking to her rear, talking as she was stepping into premises which she knew were being remodeled. The facts, therefore, are completely distinguishable from the case at bar. Likewise defendant cites several decisions concerning falls into elevator shafts. See *Johnson* v. *Citizens National Bank of Norwalk*, 152 Ohio St., 477, 90 N. E. (2d), 145. Careful analysis of the elevator shaft cases leads us to the conclusion that the fundamental premise on which these cases is based is that the plaintiff in stepping forward when he could not clearly see and while stepping into an area which he had no reason to believe or anticipate was safe is himself negligent. This court ruled to the same effect in *Helvich* v. *George A. Rutherford Co.*, 96 Ohio App., 367, 114 N. E. (2d), 514.

The jury, however, was entitled to find from the evidence

adduced in the instant case that the plaintiff had reason to believe that the way he was traveling was safe. He was using an authorized pathway. There were no plans known to him for construction anywhere in the vicinity of the pathway. The only persons concerned with the excavation, to the knowledge of the plaintiff, were his own employees and Norton. Norton, however, was busy working some 450 feet away and it would be sometime before Norton's men would be working in the vicinity of the existing driveway. Coupled with the fact that the day before, at the close of the working day, the plaintiff had visited the very place and found no indication and no mention of the proposed excavation. Furthermore, the jury could find from the evidence that when an excavation was made so close to a driveway in such constant use, one would expect to encounter barricades or warning lights about it.

Defendant introduced into evidence numerous photographs of construction projects of plaintiff in other places to establish that none of these trenches, holes, and excavations contained any form of barricades or warning lights even though they were in close proximity to access routes on the job. The plaintiff explained that all of those excavations were constructed pursuant to plan and specifications with which the workingmen concerned with the project would be expected to be familiar and know of the existence of same. We believe it was for the jury to determine whether the excavation into which plaintiff fell, under the circumstances under which it was constructed, imposed upon the defendant a duty to provide some sort of protection and that the lack of such protection could materially affect plaintiff's state of mind as he was proceeding along the pathway. We cannot find as a matter of law that the excavation into which the plaintiff fell was so open, obvious and discernible that the plaintiff as he proceeded without some forewarning of the existence of such excavation would be duty bound to see it. The question of whether this excavation should have been discovered by a man of ordinary prudence, proceeding as plaintiff was under the existing circumstances, is, in our opinion, a question of fact for the jury. This issue was submitted under a proper charge by the trial court and was obviously resolved against the defendant.

We are of the opinion that a correct interpretation of the law of contributory negligence applicable to the evidence adduced in this case is set forth in 38 American Jurisprudence, 879, Negligence, Section 199, as follows:

"* * * One who is invited to come upon premises to transact business with the owner or occupant may assume, in the absence of circumstances which indicate or which reasonably should indicate the existence of defects or dangers in the premises, that the premises are safe for the use to be made of them under the invitation. In other words, it is not contributory negligence for an invitee upon premises to fail to look out for danger when there is no reason for an ordinarily prudent person to apprehend a peril."

Ohio authority in accord, see: *Weigel* v. *Cottage Building and Loan Co.*, *supra; McGeary* v. *Reed, supra*. It is interesting to observe that on the facts of the *McGeary case*, the hazard in question was a cord strewn across the stairway of the premises under construction and that it had been placed there between the time the plaintiff had previously been upon the premises and the time of the accident and was unknown to the plaintiff.

The argument that the accident occurred after normal working hours does not impress us. The nature of the business and the circumstances under which plaintiff was employed, as revealed by the record, justify a finding that plaintiff's presence after so-called normal construction hours was still foreseeable.

The Ohio law on the affirmative defense of assumption of risk is clearly delineated in the case of *Ricks* v. *Jackson*, 169 Ohio St., 254, 159 N. E. (2d), 225. It was therein held to be prejudicial error to the rights of the plaintiff to submit this issue to the jury, even on a proper charge, where there is no evidence to support the issue. The court further makes it clear that in the absence of evidence that the plaintiff knew of the particular danger, or that the danger was so obvious that he must be taken to have known of it, it cannot be held such a person assumed the risk of injury from the danger presented. For reasons which we have already stated, we are convinced that the record is completely silent on any knowledge of the particular danger by the plaintiff so as to establish that he pro-

ceeded forward into an area dangerous to him with full knowledge and appreciation of the hazard presented. There is a difference between assumption of risk and contributory negligence. This difference has been recognized by all authorities on Tort Law. See *Miller* v. *McAllister*, 169 Ohio St., 487, 160 N. E. (2d), 231.

We, therefore, conclude that assignment of error No. 7 is not well taken since the trial court did not err in submitting the issue of contributory negligence to the jury. Assignment of error No. 5 is not well taken since the trial court properly determined upon motion that there was no evidence of any finding of assumption of risk on the part of the plaintiff. For reasons already discussed, we conclude that assignments of error Nos. 1, 2 and 3, are not well taken, as this cause, upon its facts, constituted a proper question for the jury on the issues of defendant's negligence and plaintiff's contributory negligence.

We come now to the question—did plaintiff's own contract, containing an indemnity provision, bar him from a right of recovery which otherwise would be available to him under the law? We agree with the contenton of both parties that the question is one of law and not of fact for the jury. The real determining question is whether the act of the plaintiff in traversing the existing driveway to inspect the premises for possible emergency field changes in his grading and excavation, plan, constituted an "act or omission" on his part while engaged in the performance of his subcontract so as to require plaintiff to indemnify or hold harmless the defendant from damages sustained by the plaintiff. The indemnity provision is part of clause 11 of the subcontract between plaintiff and defendant, and particularly, sub-paragraph (b) of that contract. The entire clause 11 of the contract is under the general heading of "Workmen's Compensation, public liability and property damage." Reading clause 11 as a whole, it obligates the plaintiff, as the subcontractor, to provide insurance and financial guarantees to protect the contractor, defendant herein, from financial loss. This strongly indicates that what was sought was to provide indemnity for the general contractor for any possible vicarious liability or responsibility on its part arising out of acts or omissions of its subcontractor who would be financially protected through insurance.

We are impressed with the reasoning expressed in 11 Ohio Jurisprudence (2d), 400, Contracts, Section 156, concerning reasonable construction of contracts which reads as follows:

"All contracts should receive a reasonable construction in order to carry out the presumed intention of the parties as expressed by the language used. Instruments are not to be construed so as to arrive at absurd or impossible results. If the meaning is doubtful so that the contract is susceptible of two constructions, the interpretation which makes a rational and probable agreement must be preferred. Where a contract is equally subject to several interpretations, one of which presupposes rational action upon the part of all parties thereto and the other irrational action upon the part of one of the parties thereto, courts, in seeking to determine the intention of the parties will assume that the parties entering into the contract were each exercising reason and give to the contract such reasonable construction as it will bear."

We are of the opinion that to construe the contract as contended by the defendant would, in effect, deny the plaintiff any right of recovery for claimed negligence of the defendant, merely by his physical presence upon the property. This does not appear to be the type of rational understanding of the purposes of such a contract as contemplated in the law. It would have been possible for defendant to draft an agreement, accomplishing the purpose for which it contends the instant clause is applicable. The defendant could have inserted into its contract a clause providing that the subcontractor shall at all times indemnify the contractor or hold him harmless on account of any and all damages sustained by any person, including the subcontractor or his employees, while engaged in the performance of the work provided by the subcontractor. We do not believe, however, that the language of "acts or omissions" is equivalent of saying any work done in the performance of the subcontract.

The very authority cited by the defendant, namely, *St. Paul Mercury Indemnity Co.* v. *Kopp*, 70 Ohio Law Abs., 259, 121 N. E. (2d), 23, contains language notably distinguishable from the language of the instant indemnity provision.

Likewise the Federal case of *Seabolt* v. *Pennsylvania Rail-*

*road Co.*, 290 Fed. (2d), 296, in which an industry was required to indemnify the railroad under a clause somewhat similar to that in the case at bar for its failure to maintain a gate used by the railroad employees and permitting the same to get into a condition of disrepair, is clearly distinguishable from the case at bar. We are of the opinon that a failure to inspect or maintain a gate or other physical property would constitute an "act or omission" just as a failure to barricade or provide warning lights, would, undoubtedly, constitute an "act or omission." But there is nothing in the instant indemnity provision suggesting an attempt by the defendant to exculpate itself from its own negligent "act or omission." We, therefore, conclude that the trial judge was correct in determining as a matter of law that the indemnity provision was not applicable to the facts upon which plaintiff has based his cause of action and, therefore, assignment of error No. 4 is not well taken.

Having concluded, for the reasons stated in this opinion, that the plaintiff had established a case for submission to the jury upon a proper charge of the trial court, we now proceed to examine whether error in the trial asserted by the defendant intervened which was prejudicial to defendant's rights so as to warrant the granting of a new trial.

Assignment of error No. 10 complains of the trial court's giving of plaintiff's special requests to charge before argument numbers 2, 3, 4 and 7. Plaintiff's request No. 2 merely defines the legal duty which defendant as general contractor owed to plaintiff as an independent contractor upon the premises for business purposes. In the light of our analysis of the evidence, clearly, this charge is correct. Special request to charge No. 3 of the plaintiff sets forth guidelines for the jury patterned after an approved instruction in the case of *McGreary* v. *Reed, supra*, to determine whether or not contributory negligence of plaintiff was established under the facts in evidence.

The error complained of in this charge by defendant is that it passes onto the jury the opportunity to consider the discernibility of the hole under the excavating conditions in determining whether or not the plaintiff should be found chargeable with contributory negligence. We are of the opinion that this is a fair issue of fact to be considered by the jury in a case such as

this, where plaintiff is proceeding along a pathway which he apparently had every reason to believe was safe and authorized for him. This is quite different from proceeding in a darkened passageway, open elevator shaft, or darkened room under construction, where one has no right to proceed on the assumption that the way ahead is safe. As applied to the facts of this case, we, therefore, find no error in giving this charge. Plaintiff's special request to charge No. 4 is a proper charge dealing with guideposts to assessment of damages.

Plaintiff's request to charge No. 7 tells the jury in effect that contributory negligence to exist must amount to not only a want of ordinary care for his own safety on the part of the plaintiff but a proximate casual relationship between such want of care and the injury complained of. It is significant to note that the verdict here was not tested by special interrogatories. Our Supreme Court and Appellate Courts have on many occasions held that even where, as a matter of law, contributory negligence existed, the jury could still find for the plaintiff because an issue of proximate cause relating that contributory negligence to the accident was presented as a question of fact. See *Chambers* v. *McFerren*, 168 Ohio St., 398, 155 N. E. (2d), 917. We, therefore, find no error prejudicial to the rights of defendant in giving this charge, and, therefore, find that assignment of error No. 10 is not well taken.

Assignment of error number 11 relates to claimed error in refusing to give certain special request to charge before argument by defendant, specifically Nos. 8, 9, 10, 11 and 12. Special request No. 8 states to the jury that as a matter of law it was not negligent in failing to barricade or place lights around the excavation within private property. As we have already stated, this is a question of fact for the jury to determine. Special request No. 9 relates purportedly to the purpose of plaintiff in being on the premises and could not help but confuse the jury under the interpretation of law we have placed upon the facts of the case. The test, as we view it, is not whether the plaintiff was primarily on the premises for the purposes of his own benefit and convenience but whether he was on the premises to carry out a purpose incident to the performance of his contract. Defendant's special charge No. 10 tells the jury that a con-

tractor is not negligent in failing to guard such "natural and necessary hazard after the work day is over and the property is closed for ordinary business purposes." Such a charge would, undoubtedly, be applicable to premises having a well defined ordinary business purpose. As applied to the facts of the instant case, however, the charge gives the jury no guide as to what is a "danger and hazard naturally and necessarily created" and there is substantial evidence that the septic tank hole into which plaintiff fell was not such a hazard. Furthermore, the charge does not make the issue of whether the hole in question was a danger and hazard naturally and necessarily created, a fact question for the jury, but purports to determine it as a matter of law. This charge as well as charge No. 8 of the defendant was allegedly predicated upon the decision of this court in *Helvich* v. *George A. Rutherford Co., supra.* In that case, however, there was no evidence to support any reason to foresee a visitation by anyone coming upon the premises after the close of normal working hours. The facts of the case were concerned with a remodeling of the interior of a leased portion of a building. Plaintiff, as a night watchman, employed by the owner of the building, rather than the lessee, had no business going into the premises in the first place since, as determined by this court as a matter of law, his purpose in being on the premises did not remove him from the status of a mere licensee. Furthermore, the removal of the balcony railing which created the hazard, injuring Helvich, was clearly a danger and hazard naturally and necessarily created in the performance of the work for it was one of the specified jobs the contractor was hired to do. We cannot, therefore, accept the proposition that the law applicable to Helvich is in any way applicable to plaintiff. Charge No. 11, concerning the encountering of conditions of risk naturally resulting from the performance of the work, is not applicable as stated for reasons already discussed in this opinion.

Defendant's charge No. 12 states the law applicable to the rights only of a bare licensee and not those of business invitees. However, charge No. 12, as promulgated by the defendant, does not tell the jury that the law therein stated should be applied by them only if they find that plaintiff was a bare licensee, and, therefore, in the form presented, the charge was properly re-

fused by the trial court. We, therefore, find no error in assignment of error No. 11.

Assignment of error No. 12 relates to claimed error in the general charge to the jury with particular reference to the charge on the issue of damages. We do not believe it necessary to discuss this assignment in extended detail since the defendant makes no claim that the verdict is either excessive or the result of passion and prejudice. The serious injuries and disabilities with which the plaintiff is afflicted as shown in the record and are, incidentally, uncontroverted, support the verdict which was rendered. We are of the opinion, in analyzing the charge as a whole, that it was a fair and correct charge upon all issues submitted to the jury. Therefore, this assignment is not well taken.

Assignment of error No. 8 asks us to find that the verdict and judgment are against the manifest weight of the evidence. With regard to this assignment of error, it is probably sufficient to state that there is not a concurrence of three judges who are of the opinion that the case should be reversed on the weight of the evidence. More important, however, it is our opinion that there is ample evidence to support each question of fact tried by the jury in the instant case. Further, under the instructions given the jury by the trial court, the jury could well find that it was the breach of duty of the defendant in its failure to protect plaintiff against a foreseeable risk of harm which was the proximate cause of the serious injuries suffered by the plaintiff in the instant case. We are of the opinion that it is not the function of this court to reweigh the evidence in an attempt to reach a conclusion different from that of the triers of the facts. It is rather the function of this court to search the record to see whether there is sufficient evidence for the triers of the facts, exercising judgment of reasonable men, to come to the conclusion which they did. We conclude there is such a sufficiency of evidence, applying the reasonable man test, to justify the findings by the jury in favor of the plaintiff. We, therefore, find that assignment of error No. 8 is not well taken. See *Joyce* v. *Union Carbide & Carbon Corp., supra*.

With regard to assignment of error No. 9, we wish to state that we have examined the bill of exceptions in its entirety,

paying particular attention to the claims of error concerning the reception of evidence by the trial court on cross-examination of defendant's expert witness, Berwin J. Fry. Taking the bill of exceptions as a whole, we feel that the defendant had ample opportunity to introduce into evidence all possible testimony and exhibits setting forth its position, and that no error intervened in the admission or exclusion of evidence to the prejudice of the defendant. We believe that under the substantial justice rule, the defendant had a fair trial and that the judgment ought to be affirmed.

We find no apparent error on the face of the record as suggested by assignment of error No. 13.

For the reasons stated above, it is the opinion of the majority of this court that the judgment herein is not excessive, that it is supported by ample evidence, and that there is no error in the trial of the cause prejudicial to the rights of the appellant. Therefore, the judgment of the court below, entered in favor of the plaintiff, is affirmed. Counsel to prepare a journal entry in conformity with this opinion noting exceptions to defendant.

CORRIGAN, J., concurs.
SKEEL, C. J., dissents.

CORRIGAN, J. (concurring in judgment). I concur in the judgment of affirmance. It is my opinion that the plaintiff was a business invitee. In my view, the paramount question presented to us is upon the issue of contributory negligence, and I am also of the opinion that it cannot be said as a matter of law that plaintiff was negligent. He was familiar with the existing driveway and the fact that it was safe in the area on and about the driveway before the excavation, and he had no knowledge that the excavation had been made when he returned at around sunset on the evening of the accident. The light was dim and the outline of the excavation was necessarily obscure. Plaintiff's testimony was that it was almost dark at the time of the accident. Plaintiff's testimony further was that he could not distinguish the hole from the surrounding area "because all that ground looked the same all of the way

around.'' The excavation was, according to some of the testimony, within a few inches of the edge of the existing driveway which he was traversing with confidence to get from the public road to the part of the job site where he was to do work the following day. True, a pathway is not an invitation to leave at any place until its end is reached. But with just a few inches between the safety of the existing driveway and the recently created danger, a slight misstep would have precipitated him into the excavation. Under such circumstances, it is for the jury to say, under a proper charge on contributory negligence, whether a misstep or a deviation of a few inches from the edge of the pathway he had previously traveled constituted a step which a reasonably prudent person would not have taken.

I find no error in the record prejudicial to the substantial rights of the defendant.

SKEEL, C. J. (dissenting). The facts as stated in the majority opinion should be amplified. The driveway leading into the property near which the defendant dug a filter bed, trench and hole for a septic tank was the driveway constructed by the former owner of the farm. The farmhouse had burned and was left in a dilapidated state. The driveway was not constructed in furtherance of the construction work in progress at the time plaintiff was injured, its location having been determined for the benefit of the owner of the farm and was not a facility constructed for the use of those engaged in the construction work there in progress and, therefore, they were permitted to use it if it suited their convenience.

The relationship between the plaintiff and the defendant was that of general contractor (the defendant) and independent subcontractor (plaintiff). This relationship was created by a contract in which the plaintiff agreed to do certain grading for a unit price. It was the obligation of the plaintiff to do the work agreed upon and of the defendant to pay the unit price under the terms of the contract. The plaintiff's compensation was not concerned with benefits to the defendant in his contract with the owner for a percentage of any amount saved in the construction of the building from the guaranteed maximum nor was a completion date fixed even though both contracts provided that time was of the essence.

On the Saturday before the accident the defendant, as was required of him under his contract with the owner to provide temporary toilet facilities in the temporary field office for the workmen, excavated a trench, a filter bed and hole for a septic tank, the excavation being about forty feet in length, five or six feet wide and varied in depth from seven feet to about three feet. This excavation started at about the place of the temporary field office then being constructed some three hundred feet from the public highway and paralleling closely the old driveway as above set out. The plaintiff had visited the construction site in the early afternoon of the Saturday preceding the day (Sunday) of the accident. After he left the premises, the defendant dug the necessary hole to provide toilet facilities for the field office as required by defendant's contract with General Electric.

The plaintiff again visited the construction site late Sunday afternoon, giving as his reason that there had been heavy rains Saturday night and Sunday morning which might have required him to reschedule his work plans for the following Monday morning. He arrived at the construction site about 6:00 P. M. It was getting dark. Sunset was at 5:59 P. M. His testimony as to his ability to see where he was going is in considerable confusion. He testified that he did not see the hole before he fell into it after saying that it was "almost dark" and in explaining his ability to see the driveway, stated that because of the lumps of clay and ruts on and in the driveway, "I was careful as I walked." He also testified that he could not distinguish the hole from the surrounding area because all of the ground looked the same. Certainly, if the plaintiff could not clearly state the condition of the light or of his ability to see the surroundings at the time of the accident, the jury should not have been permitted to guess about the conditions. If it were sufficiently light to see where he was going or if it were dark so that he could not proceed safely, then in either event, his failure to use ordinary care would be the proximate cause of his injuries. At least he did not see an excavation forty feet long and five feet wide, varying in depth from three to seven feet, however, he did observe that the dirt taken out of the excavation had been piled to the west of the excavation. Cer-

tainly, its presence indicated that something had been done after he left the construction site early Saturday afternoon.

Plaintiff's visit late Sunday afternoon was for his own purpose. He was in no sense a business visitor. He could not have expected to find anybody (defendant or otherwise) on the construction site on a Sunday afternoon or early evening. As said by the Supreme Court in paragraph one of the syllabus in the case of *Scheibel* v. *Lipton*, 156 Ohio St., 308, 102 N. E. (2d), 453:

"In tort law an 'invitee' means a business visitor, that is, one rightfully on the premises of another for purposes in which the possessor of the premises has a beneficial interest. A social guest is not a business visitor and is not an 'invitee' as that term is used in tort law."

Under the circumstances of this case, it is undisputed that the plaintiff was visiting a construction site where work was in progress in the construction of a building. It is a matter of common knowledge that as work progresses on a construction site, hazards necessary to accomplishing the purposes intended will be created, and those who go on such premises must accept such dangers and use care to avoid them as such circumstances require. The plaintiff was a grading contractor and was completely familiar with such matters.

In the case of *Schwarz* v. *The General Electric Realty Corp.*, 163 Ohio St., 354, 126 N. E. (2d), 906, the Supreme Court said in the first paragraph of the syllabus:

"Where an owner of premises engages an independent contractor to do work thereon an employee of the contractor, while performing the work, is on the premises impliedly as an invitee of the owner and the owner owes the employee the duty of exercising ordinary care to maintain the premises in a reasonably safe condition for use, this duty not extending, however, to any inherent hazards necessarily present because of the character of the work to be done."

If plaintiff had visited the construction site during business hours, the progress in preparing for a septic tank, as required of defendant by defendant's contract, would have been obvious. The defendant owed no duty to guard against a danger necessarily created under defendant's contract to construct a build-

ing, and his failure to barricade the septic tank hole located well within the construction area and three hundred feet from the public highway was not negligence as a matter of law.

For the foregoing reasons, the judgment should be reversed and final judgment entered for the defendant.